### 37452. WALLS et al. v. GARRETT et al.

PER CURIAM.
On November 12, 1980, Unseld Garrett and Willis McConnell filed this election contest pursuant to Code Ann. § 34-1701 et seq., in Towns County Superior Court to challenge the results of the school superintendent's and sheriff's election, respectively, at the November 4, 1980, general election in Towns County. On January 12, 1981, the trial court entered findings of fact and conclusions of law, rendered judgment for the plaintiffs, and ordered a new election be held not earlier than sixty days nor later than ninety days from the date of the order. He then stayed his order pending the decision of

this court.[1] The trial court entered the following findings of fact and conclusions of law:

"According to the election returns, certified by the Secretary of State's Office, plaintiff Unseld Garrett lost his bid for the office of School Superintendent by 33 votes. Documents introduced into evidence at trial show the following breakdown of the election results for the office of School Superintendent:

| | Total Votes | Votes Cast by Absentee Ballots | Votes cast In Person |
|---|---|---|---|
| Garrett | 1628 | 187 | 1441 |
| Kendall | 1661 | 397 | 1264 |

"In the race for the Sheriff's office, plaintiff Willis McConnell lost by a total of 122 votes. Documents introduced at the trial show the following breakdown of the election results for the office of Sheriff:

| | Total Votes | Votes Cast by Absentee Ballots | Votes Cast In Person |
|---|---|---|---|
| McConnell | 1614 | 191 | 1423 |
| McKay | 1736 | 416 | 1320 |

"There are 4959 Registered Voters in Towns County according to certificates of registered voters filed with the Secretary of State. Of these, 3611 voted in the November 4, 1980 General Election. Six hundred sixty (660) of the 3611 ballots were cast by absentee voter procedure. Thirty (30) absentee ballots were 'voided'. Each of the plaintiffs here received a majority of votes cast in person, but each received less than half the absentee votes cast in his race.

"As to matters of record clearly the responsibility of the Board of Registrars:

"The list of electors (Registered Voters) does not show address and zip code of voters. Not all voter registration cards have address and identifying information thereon and many do not have answers to the statutory questions concerning criminal convictions, nor information completed in the 'Oath of Applicant'. Ninety-eight (98) paper ballots used as absentee ballots either had no election district indicated thereon or had a non-existent (in Towns County) election district number indicated thereon.

"As to matters revealed to Registrars in the absentee voter process:

"Sixty-eight (68) envelopes from which were accepted and

---

[1] On April 2, 1981, the appellees filed a motion for expedited consideration of the appeal which this court granted on April 9, 1981. The parties argued the appeal orally on April 14, 1981.

counted Absentee Ballots bear oaths by the particular voter swearing that his or her residence is a location other than Towns County. Another 10 envelopes from which were accepted and counted Absentee Ballots bear oaths which contain incomplete information such as no residence address, an out of county address, or no signature.

"As to matters apparently existing, but not likely to be known to the registrars unless directly called to their attention or unless disclosed in a process of purging the registered voter list of the county:

"At least 2 persons who cast absentee ballots had registered within the year as voters in adjoining counties. Four (4) persons who testified by deposition have resided in other counties for anywhere from 5 to 27 years with varying degrees of contact with Towns County — all visit relatives in Towns County periodically, some buy auto license plates in Towns County, one owns real estate in Towns County, but none lived or worked in Towns County. Three (3) absentee voters who testified by deposition are residents of a retirement community in Fulton County. They had moved from Towns County at least two months prior to the general election, but had not changed voting registrations. None of these persons indicated any present intent to return to reside in Towns County. Two (2) Towns County voters who testified in person had moved their residence and voter registration to Towns County within the year. Another several witnesses testified as to their living arrangements and why they consider Towns County their residence or domicile.

"As to matters involved in the conduct or counting of the election or ballots in the general election:

"Some person or persons using the same name voted 3 different times (once in person and twice absentee) in this general election though there is only one registered voter by that name on the 'List of Electors'. Half of one hinge of the two hinges on the ballot box containing absentee ballots was loose and separated from the box at the time the said box was delivered to the vote counters after the polls had closed for the day.

"Absentee ballots mailed to the registrars with oaths unsigned were frequently put by registrars in the absentee ballot box with other absentee ballots to be discredited or rejected by poll officials or counters if they saw fit, rather than being 'rejected' by the registrars or rather than double checking the information or lack thereof. The registrars 'voided' some absentee ballots due to lateness, or finding out the voter had been convicted of a felony or due to the voter appearing and voting in person.

"The Registrars of Towns County are of recent vintage—two of the three having that responsibility less than four months prior to the general election. None of them had received any training on registration and election laws.

\* \*˙ \*

### Conclusions of Law

"The registrars of Towns County failed to perfect and file a true and correct list of the electors of their county, including names, addresses and zip codes, as required by Code §§ 34-622 and 34-623. This is an election irregularity.

\* \* \*

"The registrars of Towns County failed to require full information disclosure on voter registration cards and failed to reject applications from applicants who did not disclose all requested information, a violation of Code § 34-614. This is an election irregularity.

"The registrars of Towns County failed to reject 78 absentee ballots as to which the absentee elector had either failed to sign the required oath, or had failed to furnish required information or as to which the furnished information did not comply with that on file in the registrar's office. This being required by Code § 34-1407, such failure being a violation of law by which nonresident persons were illegally permitted to vote by absentee ballots in Towns County. This constituted illegal votes received and counted in the election.

"Six voters found by evidence presented here to be clearly residents of and domiciled in counties other than Towns, were permitted to vote either in person or by absentee ballots in the election in question. One voter cast three votes in the same election. This constituted illegal votes received and counted in the election.

"Election returns carry a presumption of validity. *(Cowart v. City of Waycross,* 159 Ga. 589.) The burden of proof is upon the plaintiff to show that a sufficient number of electors voted illegally or were irregularly recorded in the contest being challenged to change or cast doubt on the election. It is not for whom they voted, but that they voted in this 'race' or 'races' illegally. *Taggert v. Phillips,* 242 Ga. 484 (1978).

"Or, as more recently stated, where the grounds of an election contest are malconduct, fraud, or *irregularity* by any primary or election official or officials sufficient to change or place in doubt the result [Code § 34-1703 (a)] . . . '(T)he burden is on the (plaintiffs) to affirmatively show that the facially valid results were invalid due to

an irregularity sufficient to place the entire election result in doubt'. *Johnson v. Rheney,* 245 Ga. 316 (1980).

"While mere technicalities and mere irregularities should not justify the voiding of an election, where such irregularities can obviously affect the outcome of the election such election should be set aside upon appropriate contest and showing by a preponderance of the competent evidence.

"The essence of this contest is the validity and credibility of the absentee ballots. The plaintiffs contend essentially that they were elected by Towns County residents voting in person at the polls on election day, but were defeated by non-residents of Towns County voting via absentee ballots.

"There are several irregularities proved by the plaintiffs. Each irregularity standing alone probably would not be sufficient to cast the outcome of these elections in doubt. But each irregularity compounds another, and when combined, all add up to substantial questions of the validity of the absentee voter process in this election.

"The voter registration cards of this county are incomplete, inaccurate, and unreliable. Some contain no identifying data at all concerning the voter. From the unreliable voter registration cards is made up the 'List of Electors' which has nothing but names — no addresses as required by law. Thus, there is little or no identifying data by which registrars, or challenging citizens, can determine the validity of a voter's request for a ballot. The question of residence or domicile of a voter apparently has been of little concern to the election officials of Towns County. Persons apply for, receive and cast Towns County absentee ballots who have not lived in that county for many years. No serious effort is made to determine those persons disqualified for having been convicted of criminal offenses. That question was frequently unanswered on Voter Registration cards and did not appear to be a matter of current record or inquiry by the registrars. Absentee voters who swore as to their residence being elsewhere received not even a second glance, much less a verification inquiry as to their bona fide residence in the county.

"The question of residence or domicile of a voter is of considerable importance. A state has power to impose reasonable residence restrictions on the availability of the ballot. State constitutions and statutes generally require as a prerequisite to the right to vote that an elector be a bona fide resident of the State, County or District involved in the election. See: Carrington v. Rash (1965) 380 U. S. 89, 13 LE2d 675, 85 SC 775; Evans v. Cornman (1970) 398 U. S. 419, 26 LE2d 370, 90 SC 1752; Dunn v. Blumstein (1972) 405 U. S. 330, 31 LE2d 274, 92 SC 995; McCoy v. McLeroy (M.D. Ga. 1972) 348 FSupp 1034; *Taggart v. Phillips* (1978) 242 Ga. 404. The Georgia

Election Code requires a person to be a bona fide resident of a geographical subdivision (election district) in order to be an elector — Chapter 34-6, and determination of that fact is the responsibility of the registrars.

"Six hundred thirty (630) absentee ballots were counted. Six hundred seven (607) absentee votes were counted in the McConnell v. McKay, Sheriff's race. Five hundred eighty-seven (587) absentee votes were counted in the Garrett v. Kendall, Superintendent's race: Obviously, enough illegal absentee ballots were cast in the two races in question to show that the challenged votes were cast in this race illegally. But were there enough such votes to change or cast in doubt the outcome of the elections. Clearly, the answer is 'yes' as to the Garrett v. Kendall race where the margin of victory was only 33 votes. As to the McConnell v. McKay race the answer must be a less clear 'yes'. The petitioners have shown some 86 votes illegally cast and counted. Further, they have shown an incomplete and illegal list of registered voters; poor record keeping, and poor or non-existent verification procedures as to registered voter cards and poor, loose or non-existent verification, certification and rejection procedures as to absentee ballots.

"These irregularities combine to produce and perhaps induce an absentee ballot tally of questionable validity and doubtful accuracy, and makes the validity and accuracy almost impossible to verify.

"These three areas of performance of public responsibility — current, accurate and valid voter registration records; current, accurate and valid list of electors; and conscientious handling of applications for absentee ballots and the absentee ballots themselves, — are the heart and soul of the trust the public and the law repose in voter registrars. If these three functions are not performed vigorously and properly then there is little need for registrars.

"I find no evidence of fraud by any of these registrars or other officials. While fraud was alleged by the plaintiffs there is no evidence in that regard, other than perhaps suspicion raised by a loose hinge on a ballot box. It is the opinion of the Court that irregularities found to exist in the election were occasioned by inexperience of the registrars and by their lack of training and lack of a thorough knowledge of the provisions of the election code that apply to them.

"This Court, therefore, finds that the general election in Towns County conducted as to the positions of Sheriff and Superintendent of Schools is and was so defective as to place in doubt the result of such elections and the said two elections are declared to be invalid and a second election will be called to fill such positions."

The defendants appeal.

1. The trial court found 86 votes illegally cast: 68 bearing oaths showing residences out of the county, 10 without residence addresses or without signatures, 6 nonresidents who were permitted to vote, and one voter who cast 3 votes.

"Election returns carry a presumption of validity. *Cowart v. City of Waycross,* 159 Ga. 589, 594 (126 SE 476) (1924)." *Johnson v. Rheney,* 245 Ga. 316 (264 SE2d 872) (1980). The burden of establishing an irregularity or illegality "sufficient to change or place in doubt the [election] result" (Code Ann. § 37-1703 (a), (c)) is on the party contesting the election. *Williams v. Price,* 246 Ga. 519 (272 SE2d 266).

The contestant "must show that a sufficient number of electors voted illegally or were irregularly recorded in the contest being challenged to change or cast doubt on the election." *Taggart v. Phillips,* 242 Ga. 454, 455 (249 SE2d 245) (1978). Here the trial court found 86 votes illegally cast and counted. The sheriff's race was lost by 122 votes. The contestant failed to show that a sufficient number of electors voted illegally in the sheriff's race to change or cast doubt on that election. The trial court therefore erred in ordering a new election for the office of sheriff.

2. The trial court concluded that the contestant in the school superintendent's election satisfied his burden by showing that 68 absentee ballot oaths bear residence addresses which rendered those voters ineligible; i.e., addresses outside the election district. Such a showing, standing alone, was insufficient to establish the prima facie invalidity of those ballots and shift the burden to the defendants to show otherwise. Code Ann. § 34-631 (d) provides: "Any provision of this Code to the contrary notwithstanding, an elector who moves from one county to another within 30 days prior to a primary or election may vote in the county or election district in which he is registered to vote."

Since it is possible for an elector to be eligible to vote in an election district even though no longer residing there, a showing that the absentee ballot oath bears a residence address outside the election district does not establish that the elector was ineligible to vote in the election district. Hence the contestant failed to carry his burden of proof and the trial court therefore erred in ordering a new election for the office of school superintendent.

*Judgment reversed. All the Justices concur, except Jordan, C. J., and Marshall, J., who dissent as to Division 2, and Hill, P. J., who dissents as to Divisions 1 and 2.*

Decided May 14, 1981 — Rehearing denied June 2, 1981.

*Lawrence S. Sorgen,* for appellants.
*Skinner, Wilson & Strickland, Frank B. Strickland, N. Sandy Epstein,* for appellees.

HILL, Presiding Justice, dissenting.

The trial court found the election system in Towns County in disarray. This decision approves that "system." Nonresidents can and do control the outcome of elections in Towns County, and this decision leaves it that way. Of the 3611 voters who voted in the election, 660 were absentee voters (30 of which were voided). That is, 18% voted or sought to vote by absentee ballots. Garrett would have won the school superintendent's race with those votes cast in person by 177 votes except that he lost the absentee ballot race by 210 votes. In the sheriff's race, McConnell would have won based on votes cast in person by 103 votes except that he lost the absentee ballot race by 225 votes. Garrett and McConnell each received less than a third of the absentee votes. The contestants were elected by Towns County residents voting in person but were defeated by nonresidents voting via absentee ballots.

A majority of the court invoke the 30 day provision of Code Ann. § 34-631 (d) so as to reinstate absentee ballots of sworn nonresidents and then hold that the contestant failed to carry the burden of proof as to the school superintendent's race. Due to an alleged failure to carry the burden of proof, the majority in effect "presumes" that those absentee voters left Towns County within 30 days of the election. I an unwilling to so presume. I would find that the contestants made out a prima facie case and require the defendants to prove that those voters left the county within the 30 days preceding the election.

The trial court found numerous election irregularities, including "poor, loose or non-existent verification, certification and rejection procedures as to absentee ballots." The court concluded that "These irregularities combine to produce and perhaps induce an absentee ballot tally of questionable validity and doubtful accuracy, and makes the validity and accuracy almost impossible to verify." The trial court concluded that the election as to both the sheriff's and school superintendent's offices "was so defective as to place in doubt the result ...." This conclusion was authorized by Code § 34-1703 and I would affirm the judgment of the trial court.