## 40544. STILES v. EARNEST.

WELTNER, Justice.

This is an election contest challenging the result of a referendum held in Seminole County, Georgia, which presented to the voters an opportunity to provide for the election of members of the Seminole County School Board, as opposed to the present system of appointment by successive grand juries. The measure failed by 17

votes; proponents of popular election brought suit; and the trial court affirmed the result of the referendum.

The complaint alleges, *inter alia,* that election officials allowed certain citizens, none of whom were election officials, to "check off" voters from a voting list, in some instances within 250 feet of the polling places.

These persons were employees of the Seminole County Board of Education, including the principal of the high school, his secretary, a school counselor, a vocational supervisor and others — all of whom testified that they visited various polling places during the time of election, and checked off voters from the voting lists. Some of them were required by election officials to move further than 250 feet from the polls; others were allowed to remain within that distance, fully visible to voters entering the polls.

OCGA § 21-2-414 (a) (Code Ann. § 34-1307) provides: "No person shall solicit votes in any manner or by any means or method, nor shall any person distribute any campaign literature, newspaper, booklet, pamphlet, card, sign, or any other written or printed matter of any kind on any primary or election day within 250 feet of any polling place. . . ."

OCGA § 21-2-408 (a) (Code Ann. § 34-1310) sanctions the appointment of official poll watchers, although they are prohibited from interfering ". . . with the conduct of the election" and are ". . . prohibited from talking to voters, checking electors' lists, or participating in any other form of campaigning while they·are behind the enclosed space." OCGA § 21-2-408 (c) (Code Ann. § 34-1310). See also 1982 Op. Atty. Gen. No. 82-30, for the proposition that checking off of voters constitutes campaigning within the meaning of the statute.

1. We are called upon to decide whether the Seminole County School Board referendum is a "primary" or an "election" so that members of the public are barred from campaigning, or checking voters' lists within 250 feet of the polls. See OCGA § 21-2-414 (a) (Code Ann. § 34-1307), OCGA § 21-3-321 (a) (Code Ann. § 34A-1206), OCGA § 21-2-408 (c) (Code Ann. § 34-1310).

OCGA § 21-2-2 (Code Ann. § 34-103) provides: "As used in this chapter, the term: . . . (4) 'Election' means any general or special election and shall not include a primary." Sub-paragraph (28) of that section provides: " 'Special election' means an election that arises from some exigency or special need outside the usual routine." Accordingly, we interpret this code section as to encompass the referendum here at issue.

2. We agree with the opinion of the Attorney General, supra, the final sentence of which is as follows: "However, it would not be

permissible for anyone, including candidates and their workers, to engage in non-communicative but otherwise campaign-related activity, specifically, observing voters and checking a voters' list, outside the polling place but within the 250-foot limit." Op. Atty. Gen. 82-30, at p. 63.

3. Is that illegality, then, sufficient to void the referendum? We think that it is. There is a sanctity to elections under our system of self-government, wherein the will of the people — freely voiced and fairly polled — is the supreme law, and that sanctity must be preserved from all assault, witting or no. See *McCullers v. Williamson,* 221 Ga. 358, 364 (144 SE2d 911) (1965). Accordingly, upon review of the record, we conclude that the illegality attendant upon the referendum is such as is "sufficient to change or place in doubt the result" thereof, OCGA § 21-2-522 (Code Ann. § 34-1703), and another referendum must be held.

*Judgment reversed. All the Justices concur, except Clarke, Smith and Gregory, JJ., who dissent.*

DECIDED FEBRUARY 28, 1984 —
REHEARING DENIED MARCH 14, 1984.

*Black, Black & Cannon, Eugene C. Black, Jr.,* for appellant. *Kenneth L. Hornsby,* for appellee.

SMITH, Justice, dissenting.
" 'Election returns carry a presumption of validity. [Cit.]' The burden of establishing an irregularity or illegality 'sufficient to change or place in doubt the (election) result' . . . is on the party contesting the election. [Cit.] The contestant 'must show that a sufficient number of electors voted illegally or were irregularly recorded in the contest being challenged to change or cast doubt on the election.' [Cit.]" *Walls v. Garrett,* 247 Ga. 640, 646 (277 SE2d 903) (1981). See also *Johnson v. Rheney,* 245 Ga. 316 (264 SE2d 872) (1980).

Today's majority opinion does not cite or attempt to distinguish these cases, and for good reason. They are indistinguishable from this appeal and should control its outcome. In *Walls,* supra, a case in which an election for school superintendent was decided by a 33-vote margin, the contestant made a showing that 68 absentee ballots were cast in an irregular manner. We held that this showing, standing alone, "was insufficient to establish the prima facie invalidity of those ballots and shift the burden to the defendants to show otherwise." 247 Ga. at 646.

In contrast to *Walls,* appellant here has utterly failed to make any showing how the alleged irregularities affected the final vote tally. "The contestant *'must show* that a sufficient number of electors voted illegally . . . to change or cast doubt on the election.' " Id. (Emphasis supplied.) This appellant has failed to do, instead relying on speculation and what amounts to an "appearance of impropriety" in the election procedures. Under our statutes and cases, this was not enough to set aside the election.

I agree with the majority that the use of "check off" personnel within 250 feet of a polling place violates OCGA § 21-2-408 (Code Ann. § 34-1310) and is per se an election irregularity. Unlike the majority, I decline to do away with the requirement that appellant prove that this irregularity was "sufficient to change or place in doubt the [election] results," OCGA § 21-2-522 (Code Ann. § 34-1703), and I would affirm the judgment of the trial court, which correctly refused to set this election aside.

I am authorized to state that Justice Clarke and Justice Gregory join in this dissent.