## S01A0100. HAYNES v. WELLS.
(538 SE2d 430)

SEARS, Justice.

Appellant Norreese Haynes appeals the trial court's ruling that because Haynes was not an eligible candidate for the fifth district seat on the Clayton County School Board, his name must be removed from the November 2000 election ballot. For the reasons that follow, we affirm.

Haynes and appellee Barbara Wells were the only two people to file and qualify for the Democratic primary for the fifth district seat on the Clayton County School Board, and were the only two people on the ballot at the primary election held on July 18, 2000. Haynes received the majority of votes, but Wells filed an election contest, contending that Haynes was not eligible to vote in the fifth district at the time of the primary, and thus was ineligible to run for the fifth district seat on the school board. A hearing was held on the challenge on September 18, 2000, and the trial court issued a judgment on September 20, 2000, ruling that Haynes was not an eligible voter of the fifth district at the time of the primary and was therefore ineligible to run for the fifth district seat.[1] Very shortly thereafter, Haynes moved for an expedited appeal in this Court, which was granted.

1. Haynes argues that the trial court erred in finding that he was not eligible to vote in the fifth district on the primary date, July 18, 2000. The trial court found that in the week before the April 28, 2000, close of qualifying for elected office, Haynes moved in with his cousin, who lives in the fifth district. Haynes claims that on April 20, 2000, four days before declaring his candidacy for the fifth district seat, he filed a request to change the address on his driver's license to reflect his cousin's address. He argues that under both federal and state law, a change of address form submitted for purposes of a driver's license also serves as notice of a change of address for voter registration.[2] Thus, Haynes urges that he should have been listed as

---

[1] See OCGA § 21-2-132 (e) (4). Although OCGA § 21-2-527 (b) provides that when a court determines that the winning candidate in an election contest is ineligible to hold office, the court generally must order a second primary or election to fill the office, the trial court in this matter concluded that a second primary was inappropriate. In so doing, the trial court noted that this Court has held that when a court does order a second primary, qualifying for the primary is not reopened, see *Ingram v. Lott*, 238 Ga. 513 (233 SE2d 770) (1977), and has also held that "[a] rerun election should be held only to the extent necessary to address the illegalities in a contested election." *Daniel v. Barrow*, 256 Ga. 318 (348 SE2d 649) (1986). Based upon this precedent, the trial court concluded that, in this case, since there was only one qualified candidate, Barbara Wells, a second primary was unnecessary, pointless, and a waste of public funds. The trial court ordered that Wells be placed on the ballot as the Democratic nominee for the general election to be held in November 2000. On September 28, the trial court entered another order, directing the entry of a final judgment in Wells's favor.

[2] See 42 USC § 1973 (gg) (3) (d); OCGA §§ 21-2-218 (c); 21-2-221 (d).

a registered fifth district voter on primary day, July 18, 2000, and that the fact that he was not so registered is no fault of his own, as he was eligible to vote.

We reject Haynes's arguments as meritless. As found by the trial court, OCGA § 21-2-132 (e) requires that when filing a notice of candidacy, a candidate must swear by affidavit that they are "an elector of the county or municipality of his or her residence eligible to vote in the election in which he or she is a candidate." Haynes's filing of a driver's license change of address form did not, as he contends, cause him to be qualified to vote in the fifth district. A driver's license change of address form that is properly filed is forwarded by the Department of Public Safety to the Secretary of State, who in turn forwards the change of address information to the county boards of registrars for appropriate action.[3] The county boards of registrars are responsible for determining whether a person meets all of the requirements to be a registered voter, and, if so, determines the district in which that person will vote. Until this action is taken, a person is not eligible to vote within a particular district.[4]

Haynes filed his driver's license change of address form on April 20, 2000, and declared his candidacy for the fifth district seat four days later, on April 24, 2000. In the normal course of business, his change of address form could not have been acted on by the Clayton County Registrar within that four-day period. In fact, the records of the Clayton County Registrar show that Haynes's voter registration was not changed as of April 24th, and thus he was not eligible to vote in the fifth district when he declared his candidacy for the fifth district seat.

Haynes must bear complete responsibility for his ineligibility to vote in the July 2000 primary. Prior to the close of qualifying on April 28, 2000, Haynes could have presented a change of residency directly to the Clayton County Registrar.[5] Had he done so, he would have been properly registered within the fifth district when he declared his candidacy. Because he did not do so, however, Haynes was properly registered at an address outside of the fifth district when he executed his Declaration of Candidacy for the fifth district seat on April 24. Thus, according to the dictates of the Elections Code, Haynes was ineligible to run for the seat, and his declared candidacy was illegal.

2. Hayes argues that the trial court erred in ruling that he was required to be eligible to vote in the fifth district at the time he declared his candidacy, because he was only required to be eligible to vote in the fifth district on the date of the election. We disagree.

---

[3] OCGA § 21-2-221 (e).
[4] Id.
[5] OCGA § 21-2-218.

OCGA § 21-2-132 (e) is quite clear:

> Each candidate . . . [filing] a notice of candidacy shall accompany his or her notice of candidacy with an affidavit stating: . . . [t]hat he or she is an elector of the county or municipality of his or her residence **eligible to vote in the election in which he or she is a candidate.**

Furthermore, OCGA § 21-2-153 (e) states that before a candidate is qualified to be nominated in a county primary, he or she must file an affidavit attesting that "he or she is an elector of the county or municipality of his or her residence **eligible to vote in the election in which he or she is a candidate.**"

3. Haynes claims that the trial court erred by not addressing whether its ruling was entirely consistent with Article II, Section II, Paragraph III of the Georgia Constitution, which states that "No person who is not a registered voter or who has been convicted of a felony involving moral turpitude . . . or who is the holder of public funds illegally shall be eligible to hold any office . . . in this state." Haynes argues that this constitutional provision, as well as Article VIII, Section V, Paragraph II of the Georgia Constitution (concerning the residency requirements for school board members) are the only permissible qualification limitations that may be imposed upon candidates for local school boards.

However, our review of the record reveals that this issue, while raised below, was not distinctly ruled upon by the trial court. "We will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point [cit.]."[6] Hence, this enumeration is deemed waived on appeal.[7]

4. Finally, we reject Haynes's argument that the trial court should have required appellee Wells to prove that at the time Haynes registered as a candidate, his address was not within the fifth district. The relevant statutes, discussed in Division 2, supra, required Haynes to file an affidavit attesting that he was eligible to vote in the fifth district. Thus, the statutes place the affirmative obligation on Haynes to establish his qualification for office. Wells is not required

---

[6] *Santana v. Ga. Power Co.*, 269 Ga. 127, 129 (498 SE2d 521) (1998). See also *Wilson v. State*, 212 Ga. 157, 158 (91 SE2d 16) (1955).

[7] Id. We would reject this argument even if it were not waived. Article VIII, Section V, Paragraph II of the Georgia Constitution expressly provides that additional qualifications for school board members may be provided by law. Article II, Section II, Paragraph III of the Georgia Constitution merely states that persons not registered to vote or who have been convicted of a felony involving moral turpitude may not hold elected office; this paragraph does not limit the legislature from establishing other qualifications for office. *Eaves v. Harris*, 258 Ga. 1, 5-6 (364 SE2d 854) (1988).

to disprove anything regarding Haynes's eligibility to run for office, as the entire burden is placed upon Haynes to affirmatively establish his eligibility for office. He failed to make that showing. Hence, his candidacy for the fifth district seat was invalid.

*Judgment affirmed. All the Justices concur, except Benham, C. J., who dissents.*

BENHAM, Chief Justice, dissenting.

By affirming the judgment of the trial court, the majority opinion rejects the person selected by the electorate, then selects the person rejected by the electorate, and then insulates the person rejected by the electorate from further challenge. Such a resolution of this dispute seems to be contrary to fundamental principles of democracy and American jurisprudence, and I must respectfully dissent.

1. In addressing appellant's claim that he was eligible to run for the Fifth District seat on the Clayton County Board of Education, the majority opinion affirms the trial court's narrow and restrictive interpretation of OCGA §§ 21-2-218 (c) and 21-2-221 (d), and 42 USC § 1973 (gg) (3) (d), also known as the "Motor Voter Act," in a manner that unduly excludes candidates from participating in the democratic process. Since this is our first opportunity to interpret OCGA §§ 21-2-218 (c) and 21-2-221 (d) in conjunction with 42 USC § 1973 (gg) (3) (d), I would, in keeping with the intent of both the Georgia and federal acts, interpret them in a broad manner so as to provide for the inclusion of citizens in the democratic process, rather than their exclusion.

The majority opinion goes on to affirm both the trial court's determination leaving the challenger the only person authorized to be placed on the ballot, and the trial court's refusal to reopen the process for other individuals to qualify. The record shows that Haynes, the winning candidate, received 528 votes and the challenger received 371 votes. Clearly, the electorate chose Haynes over the incumbent Wells. Since there were no other contestants in the race and the time for write-ins has expired, Wells will stand elected, even though the electorate rejected her for the position. In justifying its approach, the trial court ruled that re-opening the primary would be pointless and a waste of money.

In assessing this situation and the role of voters in the democratic process, I find myself in agreement with Justice George T. Smith who was joined by Justice Hardy Gregory in their dissent in *Daniel v. Barrow*, 256 Ga. 318 (348 SE2d 649) (1986): "An election is either valid or invalid. Once this court found irregularities 'sufficient to change or place in doubt the result(s)'. . . it should have ordered a new election. [Cit.] . . . This is a frustration of the free choice of the electorate, and casts a doubt over the entire primary."

2. Although the majority opinion says it does not reach the constitutional issue raised by appellant's challenge to OCGA § 21-2-132 (e) because it was not ruled on by the trial court, the opinion goes on in a footnote to say that it would find the statute constitutional. In keeping with this court's traditional approach of not addressing constitutional issues not ruled on by the trial court (*Santana v. Ga. Power Co.*, 269 Ga. 127 (6) (498 SE2d 521) (1998)), I would not address the constitutional issue.

3. In Division 4, the majority opinion, without any citation of authority, casts on the party responding to the election challenge the burden of proving that he properly qualified to run in the election. Such an approach is contrary to the traditional principles of civil procedure. OCGA § 24-4-1. Normally, the person challenging an election has the burden of proof as to the allegations contained in the complaint. *Hendry v. Smith*, 270 Ga. 17 (505 SE2d 216) (1998); *Walls v. Garrett*, 247 Ga. 640 (1) (277 SE2d 903) (1981). Under the majority's approach, a person could simply file a complaint contesting an election and then sit back and force the challenged person to prove entitlement to hold office.

The approach taken by the majority unnecessarily turns civil procedure on its head by misinterpreting what the trial court actually did in this case. The trial court ruled that the deposition of Haynes showed that the address at which he was registered to vote at the time he sought to qualify was not in the Fifth District of Clayton County. The presentation of that evidence by Wells met the challenger's burden of proof as to that part of the challenge to appellant's qualification. Notwithstanding the trial court's ruling, the majority opinion goes even further and impermissibly shifts the burden of proof to the winning candidate. Such an approach is contrary to Georgia jurisprudence and it is contrary to reason.

For the reasons outlined above, I respectfully dissent.

DECIDED NOVEMBER 1, 2000.

*Zimring, Smith & Billips, Matthew C. Billips, Maribeth Kijowski*, for appellant.

*Parks, Chesin, Walbert & Miller, David F. Walbert, Donald M. Comer II*, for appellee.