S01A0183. MIDDLETON et al. v. SMITH.
S01A0184. MIDDLETON et al. v. HAROLD.
(539 SE2d 163)

THOMPSON, Justice.

Finding irregularities in two contested primary contests in Long County, Georgia, the Superior Court of Long County declared the election invalid. In our view, petitioners failed to affirmatively show that the irregularities put the election results in doubt. Accordingly, we reverse.

A primary election was held in Long County on July 18, 2000. Frank Middleton received 1,289 votes for clerk of the superior court; his opponent, Charlotte Smith, received 1,172 votes. Birdie Nunnally received 308 votes for county commissioner; her opponent, Imogene Harold, received 288 votes. Smith and Harold filed petitions to contest the election. The superior court set aside the results and ordered a new election.

The superior court found these irregularities: Cecil Nobles, the Long County Sheriff, mailed approximately 1,200 letters to voters urging them to vote for Middleton and Nunnally. The letters, which were sent on stationery identifying Nobles as the sheriff and were processed by sheriff's department personnel at a sheriff's department sub-station, included candidate cards for Middleton and Nunnally. The sheriff used a tent to campaign for Middleton and Nunnally at the Precinct One poll. The tent was set up within 150 feet of

the precinct and the sheriff used that location to hand out campaign materials to voters.

The superior court also determined that the sheriff offered to "help" a convicted felon (who performed community service at the sheriff's department) if he would help the sheriff's candidates. In that connection, the felon picked up campaign materials at a sheriff's department sub-station. (The felon believed he picked up and took an absentee ballot to a voter.) Furthermore, the superior court found that the sheriff offered to "help" a voter who was facing DUI charges, and that the sheriff prepared and distributed 38 absentee ballot applications. Finally, the superior court noted that the elected offices in question work hand in hand with the sheriff's office. In fact, the county commission controls the sheriff's budget.

The superior court concluded that Sheriff Nobles' conduct put in doubt the validity of all 506 votes cast at Precinct One. It set aside the results of the elections and ordered the county to hold a special election on December 5, 2000. In so doing, the superior court specifically rejected the defendants' assertion that the petitioners failed to show the actual number of votes called into question. In that regard, the superior court observed that the sheriff was responsible for maintaining order at the polling places, OCGA § 15-16-10 (a) (3), and that, therefore, the sheriff's conduct was "a grave threat to the integrity of the electoral process."

We must presume that the results of an election contest are valid. *Streeter v. Paschal*, 267 Ga. 207, 208 (476 SE2d 759) (1996). Thus, an election will not be invalidated unless the party contesting the election demonstrates an irregularity or illegality sufficient to change or place in doubt the result. Id.; *Bailey v. Colwell*, 263 Ga. 111 (428 SE2d 570) (1993). To carry that burden, the challenger must show a specific number of illegal or irregular ballots — and that number must be sufficient to cast doubt on the result of the election. *McCranie v. Mullis*, 267 Ga. 416 (478 SE2d 377) (1996). Accord *Hunt v. Crawford*, 270 Ga. 7 (507 SE2d 723) (1998); *Taggart v. Phillips*, 242 Ga. 454 (249 SE2d 245) (1978). It is not sufficient to show irregularities which simply erode confidence in the outcome of the election. Elections cannot be overturned on the basis of mere speculation, *Hunt v. Crawford*, supra at 9, or an appearance of impropriety in the election procedures. Compare *Stiles v. Earnest*, 252 Ga. 260, 263 (312 SE2d 337) (1984).

Petitioners failed to carry their burden of proof by affirmatively showing that enough electors voted illegally so as to change or cast doubt on the result of the election. *Hunt v. Crawford*, supra; *Bailey v. Colwell*, supra. Their assertion, and the superior court's conclusion, that Sheriff Nobles' campaign activities put all of the Precinct One votes in doubt, is based on mere speculation and cannot withstand

scrutiny.

In *Stiles v. Earnest*, supra, in a referendum to provide for the election of members of a county school board, a majority of this Court held that the election was so tainted as to cast doubt on the fairness of the entire referendum. *Stiles* is not apposite. There, employees of the school board "checked off" voters within 250 feet of a polling facility in violation of former OCGA § 21-2-414 (a). Thus, the employees effectively "took names" of all those who voted so accounts could be settled later if it became "necessary." The improprieties in this case are not so egregious. Accord *Hendry v. Smith*, 270 Ga. 17, 18 (505 SE2d 216) (1998); *Hunt v. Crawford*, supra.

In passing, we point out that it is not necessary to invalidate an entire election simply because a sheriff violates his duty or abuses the powers of his office. A sheriff can be disciplined in other ways for such misconduct. See, e.g., OCGA § 15-16-10 (b) (sheriff shall be fined for a contempt if he fails to do his duty, including his duty to preserve order at polling places); OCGA § 21-2-567 (any person who intimidates an elector is guilty of a misdemeanor).

*Judgments reversed. All the Justices concur, except Benham, C. J., and Hunstein, J., who dissent.*

BENHAM, Chief Justice, dissenting.

The majority opinion in this case shows the danger of focusing so completely on individual trees that the forest cannot be seen. Because the majority views too narrowly the scope of election irregularities which can justify setting aside an election, and gives too little weight to the trial court's findings of misconduct by an official charged with protecting the integrity of the polling place, I must dissent to the reversal of the trial court's order requiring a new election.

The majority's decision is based on the notion that one seeking to overturn election results must be able to point to specific voters whose ballots should be disallowed, basing that rule on cases in which the facts were such that specific voters or votes were objectively identifiable. *McCranie v. Mullis*, 267 Ga. 416 (478 SE2d 377) (1996); *Taggart v. Phillips*, 242 Ga. 454 (249 SE2d 245) (1978). To further that restrictive view of what may justify the overturning of an election, the majority opinion dismisses the holding in *Stiles v. Earnest*, 252 Ga. 260 (312 SE2d 337) (1984), with the suggestion that the conduct here is not so egregious. On the contrary, *Stiles* is the case most on point to the problem presented by this case – a systematic debasement of the election process by those with an interest in it – and is itself precedent for the proposition which should govern this case: egregious and persistent violations of the election laws can in themselves constitute an irregularity sufficient to place the entire election result in doubt. See also *Johnson v. Rheney*, 245 Ga. 316 (264

SE2d 872) (1980) (the plaintiff's burden in an election contest is "to affirmatively show that the facially valid results were invalid due to an irregularity sufficient to place the entire election result in doubt.").

The fatal flaw of the majority opinion's excessively narrow focus only on specific ballots is that it ignores situations such as the present case in which the debasement of our most honored democratic institution has been effectively accomplished. Where it appears, as the trial court found here, that one official has utilized the taxpayer-provided resources of his office to advance the private interest of other politicians whose offices have influence over his, has blatantly ignored and violated the law he has sworn to uphold, and has done so with such efficiency as to render it virtually impossible to identify defective ballots or intimidated voters individually, the approach taken by the majority opinion requires the judiciary to put on blinders and declare itself impotent to protect the rights of the citizenry.

By reciting in general terms the trial court's findings, the majority opinion gives lip service to the principle that a trial court's findings are upheld unless shown to be clearly erroneous (*Streeter v. Paschal*, 267 Ga. 207 (1) (476 SE2d 759) (1996)), but then proceeds immediately to ignore those findings and their import. Those findings paint a picture of organized and persistent violations of the election laws. The sheriff, a sworn official of the county, was found to have used county employees working in a county facility to process and mail 1,200 items of partisan political material on stationery on which the sheriff's name and official title appeared.[1] The trial court also found that the sheriff used his influence over persons involved in the criminal justice system either to influence a vote or to obtain labor in advancing partisan political campaigns. Though charged with upholding the election laws, including those which limit how close to the polling place campaign activities may be pursued, the sheriff established an open and obvious presence within that limit at which campaign activities were pursued, at the same time that his office enforced the distance restriction against a representative of a candidate the sheriff did not support. The unmistakable effect of the sheriff's illegal campaign activities and abuse of power is to constitute, as the trial court found, "a grave threat to the integrity of the electoral process." The threat was not to the validity of a clearly determined number of votes, but to the validity of every vote in the precinct where the sheriff set up a tent within 150 feet of the polling place, openly defying the law in order to garner votes for the candi-

---

[1] Although not included in the trial court's findings, it was uncontested at the hearing that the sheriff also prepared 38 applications for absentee ballots for the Democratic primary, filling in all the necessary information save the elector's signature.

206

dates he supported. Yet the majority opinion stands for the proposition that regardless of flagrant abuses of authority, regardless of the trial court's specific finding that the sheriff's testimony was not credible, regardless of the trial court's finding that witnesses were intimidated, the results of the election must stand for want of sufficient specificity and detail in determining how the election was influenced.

This dissent must echo the lament in the dissent in *Walls v. Garrett*, 247 Ga. 640 (277 SE2d 903) (1981): "The trial court found the election system in [the county] in disarray. This decision approves that 'system.'" Because I believe the trial court was correct in holding that the "system" in effect on the date of the election in issue here was so irregular as to place in doubt the validity of every vote cast in the first precinct, and that this Court's decision in this case fosters the compromise of the election laws which clearly characterized the balloting here, I must dissent to the reversal of the trial court's judgment.

I am authorized to state that Justice Hunstein joins this dissent.

DECIDED NOVEMBER 29, 2000 —
RECONSIDERATION DENIED DECEMBER 1, 2000.

*Jones, Osteen, Jones & Arnold, Billy N. Jones, Richard Phillips, Robert F. Pirkle, R. Joseph Hammill, James C. Nobles, Jr.*, for Middleton et al.

*John D. Harvey, L. Catharine Cox*, for Smith and Harold.