**SECOND DIVISION**
**ANDREWS, P. J.,**
**McFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 23, 2014**

# In the Court of Appeals of Georgia

A14A0762. CITY OF BROOKHAVEN, GEORGIA et al. v. CITY
OF CHAMBLEE, GEORGIA.

MCMILLIAN, Judge.

This appeal presents an issue of first impression: whether a municipality has the authority pursuant to OCGA § 36-36-21 to annex land that the General Assembly has designated for annexation to another municipality, subject to a referendum, before the referendum takes place. We find that municipalities do not have such authority.

The facts underlying this appeal are undisputed, and thus the application of law to these facts is subject to de novo review. *Fayette County v. Steele*, 268 Ga. App. 13 (601 SE2d 403) (2004). In 2013, the General Assembly passed Local Act 205 (the "Act"), which established boundaries for an area of land (the "Annexation Area") for

annexation by the City of Chamblee, Georgia ("Chamblee").[1] Ga. L. 2013, Vol. 2, p. 4320-4322. The Annexation Area included "Century Center," a commercial development owned by Highwoods Properties, Inc.[2] ("Highwoods"). Section 1 of the Act provided a legal description of the Annexation Area and stated that it was creating a new charter for Chamblee "by annexing [the area] to the existing corporate limits" of Chamblee. Ga. L. 2013, Vol. 2, at 4320. Section 2 of the Act provided that "the election superintendent of DeKalb County shall call and conduct an election as provided in this section for the purpose of submitting this Act to the electors of the [Annexation Area] for approval or rejection." Id. at 4321. The legislation further provided that the superintendent was to conduct this referendum "on the Tuesday after the first Monday in November, 2013," and that "[i]f more than one-half of the votes cast on such question are for approval of the annexation, then this Act shall become effective on December 30, 2013." Id. But "[i]f more than one-half of the votes cast on such question are for rejection of the annexation, this Act shall not

---

[1] As Highwoods notes, the Act originated in the legislature as House Bill 619. Ga. House Journal 2013, pp. 2845, 4066, 4070, available at http://www.house.ga.gov/clerk/en-US/HouseJournals.aspx.

[2] The City of Brookhaven, Georgia joined Highwoods in filing the notice of appeal in this case but never filed any appellate briefing. Accordingly, Brookhaven's appeal is deemed abandoned, leaving Highwoods as the sole appellant.

become effective and shall be automatically repealed on the first day of January immediately following such election date." Id. The Act was signed by the Governor on May 6, 2013. Ga. L. 2013, Vol. 2, at 4322.

Thereafter, on July 1, 2013, Highwoods applied to the City of Brookhaven, Georgia ("Brookhaven") for annexation of Century Center into that city's corporate limits under the "100 percent method" of annexation outlined in OCGA § 36-36-21.[3] After Brookhaven's city council scheduled a vote on the issue, Chamblee filed a petition seeking a declaratory judgment and injunctive relief against Brookhaven. Chamblee initially obtained a temporary restraining order enjoining the Brookhaven city council from voting on the annexation. Subsequently, the trial court allowed Highwoods to intervene in the action as a defendant, without objection by Chamblee or Brookwood. And on August 19, 2013, the trial court issued an interlocutory injunction barring the City of Brookhaven "from acting to annex any portion of the [Annexation Area] until further order of this Court." In September 2013, the parties filed cross-motions for summary judgment.

---

[3] That statute allows municipal corporations "to annex to the existing corporate limits thereof unincorporated areas contiguous to the existing corporate limits at the time of such annexation . . . upon the written and signed applications of all of the owners of all of the land." OCGA § 36-36-21.

3

In the interim, Brookhaven and Highwoods filed an emergency motion in the Supreme Court of Georgia seeking relief from the August 19 injunction. On October 3, 2013, the Supreme Court granted the motion, staying the trial court's interlocutory injunction "to the extent that it prohibits a vote by the City Council of Brookhaven on the annexation of Century Center or otherwise interferes with acts of a legislative character." Thereafter, on October 11, 2013, Brookhaven and Highwoods filed a document entitled "Notice of Annexation" in the trial court, which stated that "on Tuesday, October 8, 2013, the City of Brookhaven annexed the territory known as Century Center," but which did not include any supporting documentation.

Based on that filing, Brookhaven and Highwoods asserted in supplemental briefing on the cross-motions for summary judgment that Brookhaven's annexation of the Century Center property was a fait accompli. And they argued that allowing Chamblee's annexation to proceed by enforcing the Act would mean that the Act would serve both to deannex the Century Center property from the corporate limits of Brookhaven and to annex it to the corporate limits of Chamblee. As a result, they contended that the Act would violate this state's constitutional requirement that all legislation have a single subject matter. See Ga. Const. of 1983, Art. III, Sec. V, Par. III. On October 28, 2013, the trial court issued an order granting Chamblee's

4

summary judgment motion and allowing Chamblee to proceed with its annexation. The Order also denied Highwoods's and Brookhaven's summary judgment motions, without addressing their constitutional argument. Highwoods appealed that order the same day.

Subsequently, on November 5, 2013, voters approved the annexation by referendum. Under the terms of the Act, Chamblee's annexation became effective on December 30, 2013, but in response to an emergency motion filed by Highwoods, this Court issued an order on December 19, 2013, enjoining Chamblee from proceeding with the annexation of the Century Center property pending resolution of this appeal.

1. The issues in this case require us to consider the relative powers of annexation granted to the General Assembly and to municipalities under Georgia law. The starting point of our analysis is the provision of the Georgia Constitution vesting all legislative power in the General Assembly. Ga. Const. of 1983, Art. III, Sec. I, Par. I. Historically, our Supreme Court determined that the power of annexation is legislative in nature and that the legislature could not delegate such power to municipalities because the Georgia Constitution did not authorize it to do so. See *Du Pre v. City of Marietta*, 213 Ga. 403, 405-406 (2) (99 SE2d 156) (1957); *Phillips v. City of Atlanta*, 210 Ga. 72, 75 (77 SE2d 723) (1953). See also *Ballentine v.*

5

*Willingham*, 237 Ga. 60, 61 (1) (226 SE2d 593) (1976) ("It has always been within the power of the General Assembly to extend or diminish the corporate limits of a municipality."). Therefore, annexation by a municipality required a local act by the General Assembly. See *Bruck v. City of Temple*, 240 Ga. 411, 413 (3), n. 3 (240 SE2d 876) (1977).

But in 1954, the Georgia Constitution was amended to allow the General Assembly "[to provide] by law for the self-government of municipalities and to that end [it was] expressly given the authority to delegate its power so that matters pertaining to municipalities may be dealt with without the necessity of action by the General Assembly." Ga. Const. of 1983, Art. IX, Sec. II, Par. II. This Amendment thus granted the General Assembly the authority to delegate the power of annexation to municipalities. See *Niskey Lake Water Works, Inc. v. Garner*, 228 Ga. 864, 866 (188 SE2d 864) (1972).

The General Assembly subsequently passed legislation delegating to municipalities the authority to annex adjoining land under three alternative methods: (1) the "100% method," by which a municipality may annex adjoining land upon application by all the owners of the land, with certain exceptions, OCGA §§ 36-36-20 to 36-36-23; (2) the "60% method," by which a municipality may annex adjoining

6

land upon application by a minimum of 60% of adjoining landowners, OCGA §§ 36-36-30 to 36-36-40; and (3) the "Resolution and Referendum method," by which a municipality may, on its own initiative, annex contiguous lands meeting certain requirements, by resolution and referendum, OCGA §§ 36-36-51 to 36-36-61. Nevertheless, the General Assembly has expressly retained its authority to annex or deannex by local act and has clarified that none of the alternative annexation methods "is intended to or shall be construed to in any way to restrict, limit, or otherwise impair the authority of the General Assembly to annex or deannex by local Act." OCGA § 36-36-10.[4] See also OCGA § 36-36-16.

2. In this case, the General Assembly exercised its authority to annex by local act by designating a particular tract of land for annexation by Chamblee and by

_____

[4] OCGA § 36-36-10 provides in full:

It is the express intent of the General Assembly in enacting the provisions of this chapter to provide for alternative methods for annexing or deannexing an area or areas into or from the corporate limits of a municipality. Except as otherwise expressly provided in this chapter, no provision of this chapter relating to annexation or deannexation by any such alternate method is intended to or shall be construed to in any way restrict, limit, or otherwise impair the authority of the General Assembly to annex or deannex by local Act.

7

providing that the electors in the Annexation Area would vote on the issue in a referendum.[5] But before the referendum could take place, Highwoods petitioned Brookhaven to annex the Century Center property under the 100% method, and the Brookhaven city council voted to approve the annexation. Highwoods argues on appeal that the trial court erred in relying on the Act to grant summary judgment to Chamblee because under its terms, the Act would not become effective until later, after referendum approval, which occurred approximately one month after the Brookhaven council's vote.

Thus, we must determine the Act's status at the time the Brookhaven city council voted to annex Century Center. Under Georgia law, the baseline rule is that local legislation is intended to have the effect of law "immediately upon approval by the Governor or upon [its] becoming law without his approval, unless a different effective date is specified in the Act . . . ." OCGA § 1-3-4 (b). Among other things,

---

[5] Georgia law requires such a referendum "if the number of residents in the area to be annexed exceeds 3 percent of the population of the municipal corporation or 500 people, whichever is less." OCGA § 36-36-16 (b). Although Chamblee's argument below suggests that the population of the Annexation Area met this requirement, the appellate record does not provide clear evidence on this issue. In any event, OCGA § 36-36-16 (b) empowers the legislature to provide for a referendum without regard to the population requirements. See also *Wall v. Bd. of Elections of Chatham County*, 242 Ga. 566, 572 (6) (250 SE2d 408) (1978) (holding that the General Assembly had such authority prior to statutory grant of such power).

8

the Act both identified the Annexation Area for inclusion within the Chamblee corporate limits and directed the elections superintendent in DeKalb County to hold a referendum to allow a vote on whether that designated area should be annexed. If the voters approved the annexation, the Act then stated that it would become effective on December 30, 2013. Thus, we find that the Act was in effect when signed by the Governor with regard to setting the referendum for a vote on the designated Annexation Area.[6] See *Smith v. City Council of Augusta*, 203 Ga. 511, 519 (2) (47 SE2d 582) (1948) ("It is obvious . . . that the legislature intended the portions of the [Act] providing for a referendum to become effective immediately upon its approval by the Governor.").

Highwoods argues, however, that the Act was not yet in effect when Brookhaven voted to annex Century Center based on the language that the Act would only become effective on December 30, after a positive referendum vote. But this argument ignores the language of the Act providing that if the voters disapproved the annexation, the Act not only would "not become effective," it would also be "automatically *repealed*." (Emphasis supplied.) Ga. L. 2013, Vol. 2, at 4321.

---

[6] We note that Highwoods conceded in the trial court that at the very least "H[ouse] B[ill] 619 [Local Act 205] [was] effective for the purpose of holding the Referendum."

Highwoods's argument that the Act was not in effect when the Brookhaven city council voted would render the word "repealed" mere surplusage, because the General Assembly would have had no need to repeal an Act that was never in effect.

"In construing statutes, a court must give meaning to and harmonize all parts of the statute to give them sensible and intelligent effect, while avoiding constructions that make any part of the statute mere surplusage." (Citation and punctuation omitted.) *Cherokee Warehouses, Inc. v. Babb Lumber Co.*, 244 Ga. App. 197, 198 (535 SE2d 254) (2000). Although the language providing that the Act would not become effective until December 30, 2013 was inartfully worded, when we apply the principles of statutory construction, we find that the Act went into effect upon the Governor's signature on May 6, 2013, to initiate the referendum process on the defined Annexation Area, and the referendum was a condition precedent for annexation. *Smith*, 203 Ga. at 519 (2). However, the annexation itself was not intended to become effective until December 30, 2013, if it received voter approval. Thus, we reject Highwoods's contention that the Act was not in effect until after the referendum and that the trial court improperly relied on the Act in granting summary judgment to Chamblee.

3. We next consider whether Brookhaven could exercise its power to annex Century Center out of the designated Annexation Area while the referendum process was pending, and we conclude that it could not.

As a starting point, we consider the intent of the General Assembly in enacting the alternative annexation methods vis-à-vis the General Assembly's authority to annex by local act. Although a municipality's exercise of its delegated power for annexation has been deemed an exercise of the General Assembly's legislative power, our Supreme Court has also recognized that "municipalities can receive and retain only such legislative power of the General Assembly as that body determines from time to time they should exercise." (Citation and punctuation omitted.) *Higdon v. City of Senoia*, 273 Ga. 83, 86 (3) (538 SE2d 39) (2000) (quoting *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1, 7 (1) (178 SE2d 868) (1970)). And we must keep in mind that "allocations of power from the state are strictly construed." *Kemp v. City of Claxton*, 269 Ga. 173, 176 (1) (496 SE2d 712) (1998).

The pivotal question, therefore, focuses on the scope of the General Assembly's delegation of annexation authority to municipalities, and we find OCGA § 36-10-10 particularly instructive on that issue. OCGA § 36-36-21 provides that the 100% method of annexation relied upon by Highwoods must be exercised in

11

accordance with Article 1 of the Georgia Code's annexation chapter. That article includes OCGA § 36-36-10, in which the General Assembly specifically set out its intent that the alternative annexation methods were not intended and should not be construed "to in any way restrict, limit, or otherwise impair" the exercise of its constitutionally granted annexation powers.

Because the words "restrict, limit, or otherwise impair" are not defined, we "must afford [this] statutory text its 'plain and ordinary meaning.'" (Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (751 SE2d 337) (2013). See also *Clement v. State*, 309 Ga. App. 376, 379 (1) (a) (710 SE2d 590) (2011). Black's Law Dictionary defines the term "restriction" as meaning "[a] limitation or qualification," Black's Law Dictionary (9th ed. 2009); the term "limit" as meaning to restrict, restrain, or to set a boundary, such as on power, right or authority, id.; and the term "impair" as meaning "[t]o diminish the value of." Id. Accordingly, under OCGA § 36-10-10, the alternative annexation methods were not intended to limit, restrict, restrain, set a boundary on, or otherwise diminish the value of the General Assembly's annexation powers.

Applying these plain meanings, we find that permitting Brookhaven to annex the Century Center property would clearly restrict, limit, and/or impair the General

12

Assembly's authority to annex in this case. Section 1 of the Act defined the territory to be annexed by Chamblee to include the Century Center property, and Section 2 of the Act sets the date of the referendum on the annexation of that territory, required publication of the election, and spelled out the words to be used in the referendum ballot. Allowing Brookhaven to annex a portion of this territory before the referendum could take place would, in essence, allow it to unilaterally effectuate an amendment to the Act during a period of time when the General Assembly was not even in session.[7] Such action clearly would limit, restrain, set a boundary on, and otherwise diminish the value of the General Assembly's exercise of its annexation powers through local act.

Moreover, the referendum initiated by the Act had to proceed in accordance with Georgia law. And in odd years such as 2013, such referendums may only be held on the third Tuesday in March or the Tuesday after the first Monday in November. See OCGA § 21-2-540 (c) (2) (A) (setting times for special elections); OCGA § 21-2-2 (33) (defining special elections); *Stiles v. Earnest*, 252 Ga. 260, 261 (1) (312 SE2d 337) (1984) (a referendum is a special election under Georgia law). Accordingly, the

---

[7] In 2013, the General Assembly was in session during the period January 14 to March 28, 2013. Ga. House Journal 2013, pp. 1, 48-49, 100, 2806-2808, 2861, 4877.

referendum in this case could not have occurred before November 5, 2013. The required timing for the referendum further supports our conclusion that a municipality may not carve out a portion of the legislature's designated Annexation Area before the referendum could lawfully proceed.[8]

Thus, we find that the General Assembly did not intend the alternative methods of annexation to establish a system for municipalities to race the legislature to annex land that it already has designated for annexation under local law. To the contrary, we find that OCGA § 36-36-10 prohibited Brookhaven from attempting to annex Century Center during the Act's referendum process.[9]

---

[8] We note that Georgia law provides that annexation, by local act or otherwise, does not become effective for all purposes until December 31 of the year in which it occurs. No annexation becomes lawful for ad valorem tax purposes on an earlier date. OCGA § 36-36-2 (a) and (b). However, in the case of a local act, the act itself may provide that the annexation becomes effective for other purposes on an earlier date, OCGA § 36-36-2 (a), and in the case of annexation by alternative method, the annexation becomes effective for all other purposes on the first day of the month following the month in which the requirements for annexation are met. OCGA § 36-36-2 (b).

[9] Therefore, the Act did not need to contain an express provision prohibiting municipalities from seeking to annex any portion of the designated Annexation Area in the interim, because it had already prevented any such action under OCGA § 36-36-10.

14

Highwoods also contends that a local law such as the Act cannot prevent Brookhaven's exercise of its authority to annex, which was delegated by general law, because the Georgia Constitution provides that "no local . . . law shall be enacted in any case for which provision has been made by an existing general law." Ga. Const. 1983, Art. III, Sec. 6, Par. IV. We find no merit to this argument because it ignores the express limitations imposed by general law on the delegation of annexation authority to municipalities. Even though the General Assembly may only annex by local act, its enactment of OCGA § 36-10-10 reserved to itself priority in exercising the legislative power of annexation and limited the municipalities' annexation power accordingly.

We find, therefore, that the trial court properly granted Chamblee's motion for summary judgment and denied Highwoods's motion.[10]

4. Highwoods also contends that enforcement of the Act following Brookhaven's vote to annex the property would be in violation of the Georgia Constitution's one-subject-matter rule, because the Act would simultaneously

[10] In order to maintain the status quo pending any further appellate proceedings, our December 19, 2013 order enjoining Chamblee from proceeding with the annexation of the Century Center property owned by Highwoods is to remain in effect until remittitur is filed in the trial court or until further order of this Court or the Supreme Court of Georgia.

15

deannex the Century Center property from Brookhaven and annex it to Chamblee. See Ga. Const. of 1983, Art. III, Sec. V, Par. III.[11] This argument fails.

Highwoods raised this constitutional issue before the trial court following the vote by the Brookhaven city council, but the trial court did not issue a ruling on the issue. "After [a] constitutional issue has been properly raised in the trial court, the trial court must rule upon the issue; the appellate court lacks subject matter jurisdiction to decide issues never ruled upon by the trial court." *In re July-August, 2003 DeKalb County Grand Jury*, 265 Ga. App. 870, 871-872 (2) (595 SE2d 674) (2004). Georgia courts previously have held that a constitutional issue is waived for appellate review where the trial court fails to rule upon it. *Haynes v. Wells*, 273 Ga. 106, 108 (3) (538 SE2d 430) (2000); *DeKalb County Grand Jury*, 265 Ga. App. at 872 (2). However, the Supreme Court of Georgia more recently has directed that this Court remand a case for the trial court's consideration of a constitutional issue, even if this Court has determined that summary judgment was otherwise appropriate. *City of Decatur v. DeKalb County*, 284 Ga. 434, 438 (2) (668 SE2d 247) (2008).

---

[11] That provision reads, in relevant part, "No bill shall pass which refers to more than one subject matter . . . ." Ga. Const. of 1983, Art. III, Sec. V, Par. III.

16

Although, here, we have found that the trial court properly granted summary judgment to Chamblee, we do not believe a remand is necessary for consideration of Highwoods's constitutional argument because it is based on the false premise that Brookhaven annexed the Century Center property when its city council voted on the issue. As we have found that Brookhaven lacked the authority to annex that property during the pendency of Chamblee's referendum process, no annexation by Brookhaven has occurred.[12] Thus, no issue arises as to whether enforcement of the Act will violate Art. III, Sec. V, Par. III of the Georgia Constitution.

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur.*

---

[12] Moreover, we note that Brookhaven took no further action after its city council's vote, because it was enjoined from doing so. The trial court enjoined Brookhaven from taking any action to annex Century Center, and the Supreme Court's order on emergency motion stayed only that portion of the injunction that prohibited a vote by the city council or other actions of a legislative nature. The order expressly stated that the injunction remained "in full force and effect" as to any executive or other non-legislative acts in furtherance of annexation.