Marion HAYWARD, Delores Grant, Nancy Little, Lawrence M. Libater, J. Phillips Noble, Jr., and the City of Charleston, Plaintiffs,

v.

James B. EDWARDS, Governor of the State of South Carolina, G. P. Callison, Ruben L. Gray, Zilla Hinton, Sylvia A. McCullough, and Margaret Townsend, Members of the South Carolina Election Commission, Donald Infinger, Robert Lighthart, Jr., Solomon Morse, Jr., Helen Clawson, Curtis Inabinett, Members of the Charleston County Election Commission, Cecil D. Clay, Henry E. Hollinshead, Clifton D. Green, Jr., Malcolm C. Hursey, Hiram C. Adams, James H. Lee, Sr., Charles M. Lanford, Mary R. Miller, Alfred Williams, Commissioners of the North Charleston Public Service District, North Charleston Public Service District; and Branford Heape, Defendants.

Cecil D. CLAY, Henry E. Hollinshead, Hiram C. Adams, James H. Lee, Sr., Mary R. Miller, and Alfred Williams, Defendants-Third-Party Plaintiffs,

v.

Joseph P. RILEY, Jr., Mayor of the City of Charleston, and J. Rutledge Young, Jr., Jerome Kinloch, Daniel L. Richardson, Hilda Hutchinson Jefferson, Arthur W. Christopher, Brenda C. Scott, Robert I. Ford, George A. Z. Johnson, Jr., Mary R. Ader, James B. Moore, Jr., W. L. Stephens, Jr., and Henry E. Grimball, Members of the City Council of the City of Charleston, Third-Party Defendants.

Civ. A. No. 76–2304.

United States District Court,
D. South Carolina,
Charleston Division.

June 9, 1977.
Amendment to Court's Order June 16, 1977.

Armand G. Derfner, Charleston, S. C., for individual plaintiffs.

William B. Regan, Jr., Robert N. Rosen, Charleston, S. C., for City of Charleston.

David G. Jennings, Charleston Heights, S. C., for defendants Com'rs of North Charleston Public Service Dist., North Charleston Public Service Dist. and Branford Heape.

Joseph S. Mendelsohn, Charleston, S. C., for Infinger, Lighthart, Morse, Clawson, Inabinett, Members of Charleston County Election Commission.

Randall T. Bell, Columbia, S. C., Theodore B. Guerard, W. E. "Sam" Applegate, III, Charleston, S. C., for Cooper River Park & Playground Commission.

HEMPHILL, District Judge.

This case involves the constitutionality of various sections of the South Carolina Code which provide for municipal annexations.[1]

---

1. S.C.Code Ann. § 47–19.11 (1975 Cum.Supp.) provides: Alternate method when area adjacent.—In addition to the method of initiating an annexation election provided for in §§ 47–12 through 47–14, cities and towns may annex adjacent territory as follows: Upon presentation to the city or town council of a petition signed by twenty-five percent of the freeholders resident in the area or territory proposed to be annexed, the city or town council may forthwith certify such fact to the county commissioners of election together with a description of the territory proposed to be annexed; and, if so certified, the county commissioners of election shall order a referendum and an election to be held as herein provided. No such territory shall be annexed until such a certification is made by the city or town council and a referendum and election are held. Except, however, with respect to any city or town having a population of twenty-five thousand, or more, said petition should contain only fifteen percent, or more, of said freeholders resident in the area or territory proposed to be annexed. S.C.Code Ann. § 47–19.13. Referendum and elections must approve annexation; ballot box-

On November 23, 1976, an election was held to determine whether or not an area of Charleston County known as "Garden Kiawah" should be annexed by the City of Charleston. The election procedure involved a separate "freeholder box", where only property owners could vote. Under the statutes, the annexation must be independently approved by three groups of voters; the freeholders; the registered electors (including freeholders) and the registered voters in the annexing area (in this case, the City of Charleston). The registered voters both in the City and in the area to be annexed approved the annexation while the freeholders within Garden Kiawah rejected it. The City, and various individual plaintiffs within the City and Garden Kiawah, are now challenging the constitutionality of the separate freeholders referendum in an attempt to have it declared invalid and have the annexation declared valid. The plaintiffs argue that the franchise in the freeholders' referendum is restricted to landowners [2] and that ownership of property is a constitutionally impermissible voter qualification.

The Supreme Court of the United States has ruled that in an election of general interest, restrictions on the franchise other than residence, age, and citizenship must promote a compelling state interest in order to survive constitutional attack. In *Kramer*

*v. Union Free School District No. 15*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), the Court struck down an election law limiting the franchise in local school elections to persons who own or lease taxable real property in the school district or who had children enrolled in the public schools. Likewise, in *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), and in *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), the Court invalidated statutes which placed property qualifications for voting on the electors in elections for the approval of municipal bonds.

The Supreme Court has also had the opportunity to deal directly with the question of a system of dual boxes, one for general electors and one for freeholders, in the case of *Hill v. Stone*, 421 U.S. 289, 95 S.Ct. 1637, 1643, 44 L.Ed.2d 172 (1975), rehearing denied 422 U.S. 1029, 95 S.Ct. 2617, 45 L.Ed.2d 686. That case involved a dual ballot box system whereby all electors who had "rendered property for taxation" were allowed to vote in one box and electors without property of record casts their ballots in a separate box. In order for the bond issue in question to pass, approval was required by both boxes individually and by both boxes in the aggregate. It should be noticed that the balloting procedure in *Hill v.*

es.—In cases where the referendum is held prior to the election, if a majority of the freeholders voting in such referendum do not approve the proposed annexation, the election shall not be held. In cases where the referendum and the election are held simultaneously, separate boxes shall be maintained to receive the votes of the freeholders voting in the referendum and those of the registered electors voting in the election. In order for an annexation to be validly effected, a majority of the freeholders voting in the referendum must approve the annexation; and a majority of the registered electors voting in the election must approve the annexation, both within the territory proposed to be annexed and within the corporate limits of the municipality.

**2.** S.C.Code Ann. § 47–19.15 (1975 Cum.Supp.) provides: County auditor to furnish list of freeholders to commissioners of election.—Not later than twenty days prior to the freeholders referendum provided herein, the county auditor shall furnish to the county commissioners of

election a list of freeholders showing the names of the freeholders owning the property within the territory proposed to be annexed as shown by the county tax records. The county commissioners of election shall use this list to determine what persons are eligible to vote in the referendum.

S.C.Code Ann. § 47–19.19. Freeholder defined in §§ 47–12, 47–14 and 47–19.11 to 47–19.19. For the purposes of §§ 47–12, 47–14, and 47–19.11 to 47–19.19, a "freeholder" is defined as any person twenty-one years of age, or older, and any firm or corporation, who or which owns legal title to a present possessory interest in real estate equal to a life estate, or greater (expressly excluding lease holds, easements, equitable interests, inchoate rights, dower rights and future interests) and who owns, at the date of the petition or of the referendum, at least an undivided one-tenth interest in a single tract and whose name appears on the county tax records as an owner of real estate.

**1154**

*Stone,* supra, differs from that of the present case in that, in *Hill v. Stone,* only electors who had rendered property voted in the renderers box and only electors who had not rendered property voted in the nonrenderers box. In the present case, all registered electors, including property owners, vote in the regular annexation election while only the property owners may vote in the freeholders referendum. The court, in *Hill v. Stone* characterized the holdings of the *Kramer,* supra, and *Cipriano,* supra, thusly:

> The basic principle expressed in these cases is that as long as the election in question is not one of special interest, any classification restricting the franchise on grounds other than residence, age, and citizenship cannot stand unless the district or State can demonstrate that the classification serves a compelling state interest.

The court went on to find that the bond issue in question, involving a public library, was a general bond issue and a matter of general interest to the public rather than of special interest to a particular group. Although there are minor factual differences between the *Hill* case and the case before the court, there is no rational or logical way to distinguish the two cases either legally or factually.

The South Carolina statutory annexation procedure is essentially a composite of three elections. One for registered electors within the area to be annexed; one for freeholders within the area to be annexed and one for registered voters within the annexing area. The annexation must be approved in all three elections or it will fail. The validity of the annexation may rise or fall upon the decision of any one election, including the freeholders' referendum. Success in the freeholders' election is essential to the annexation procedure and the franchise in the freeholders referendum is limited to property owners. As the Supreme Court held in *Hill v. Stone,* supra, and the above cited cases which form the basis for that opinion, a property ownership qualification in an election of general interest cannot stand unless the state can demonstrate that the classification serves a compelling state interest. This the state has failed to accomplish.

The defendants essentially oppose the plaintiffs' motion for summary judgment on two grounds. First, they argue that the Supreme Court has historically allowed state legislatures wide latitude in structuring election procedures. In *Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 the Supreme Court, speaking of the broad discretion granted to the states in annexation matters, said

> Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. . . . The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. . . . The state . . . at its pleasure, may . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of citizens, or even against their protest.

The defendants also cited the case of *Thompson v. Whitley,* 344 F.Supp. 480 (E.D. N.C.1972) which involved an annexation procedure where the residence of the annexed area were completely denied the right to vote on annexation issues if their areas were contiguous to cities with populations within certain ranges. The Court in that case held that the right to vote within the annexed area was not fundamental in that it only related indirectly to participation in representative government. This court cannot agree with that conclusion in that there is almost no conceivable type of election which could have a more profound effect on the political life of a community than an annexation election. While it might possibly be permissible to deny all persons within the annexed area the right to vote on such annexation, in the present

case some of the electors were allowed to vote once and some were allowed to vote twice. The differentiating criteria of the ownership of property and that criteria is invalid.

The defendants also contend that the annexation election is a "special interest" election and is therefore within the exception to the ban on property qualifications, as was outlined in *Salyer Land Co. v. Tulare Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) and *Associated Enterprises, Inc. v. Toltec Watershed Improvement District,* 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973). The statutes in question in both those cases involved elections for the establishment and management of water storage districts to provide irrigation to arid agricultural areas. Not only were the elections limited to landowners but the vote was weighted according to acreage owned. The Court gave the statutes constitutional approval due to the limited purpose of the water storage districts and the disproportionate effect on landowners. The limited purpose of the water storage districts may be illustrated by the fact that the district's only purpose was the acquisition, storage and distribution of water for irrigation. These districts served no other public service needs and served no political functions whatever. As to the disproportionate effect on landowners, it was apparent from these cases that all costs of district projects were assessed directly against the land in proportion to the benefits received, that charges for services rendered were collectible directly from landowners and that such charges became a lien on the property involved.

While *Salyer* and *Associate Enterprises* deal with a limited purpose election, the present case deals with annexation, a decision of general political interest which will have a pervasive effect upon every citizen in the area to be annexed. Annexation not only involves changes in taxation; police, and fire protection, sanitation, water, sewer and other public services, but brings about a complete change in the form of municipal government itself. It is not a special limited purpose election as found in the water district cases, but rather it is a general

interest election which necessitates an equal voice for every participant.

 Therefore, for the foregoing reasons, Sections 46–19.11 and 19.12, 19.13, 19.-14, 19.15, 19.16, 19.19 are in violation of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States insofar as they provide for a separate freeholder referendum and annexation election or make any provision for the implementation of such referendum. All portions of such statutes which do not refer to the separate freeholder referendum are severable and should remain valid and in tact.

 Furthermore, the defendants shall consider the "Garden Kiawah" annexation to have been approved in the election of November 23, 1976, and the defendants are enjoined from interfering with the City of Charleston's annexation of the "Garden Kiawah" annexation area as effected by the votes cast under the constitutionally permissible procedure in the November 23rd election.

Defendants' request for a new election is denied, as a new election, but for the existence of the impermissible freeholders' referendum, would be identical to the original. To order a new election in a case such as this would encourage the electorate to disregard electoral procedures which they believed questionable and go to the courts instead of the polls. By allowing the valid election to stand, the electors are encouraged to first exercise their franchise and then go to the courts if they feel their constitutional rights were disregarded.

The defendant James B. Edwards' motion to dismiss is granted in that all parties agreed at the hearing that defendant Edwards, as Governor of the State of South Carolina, was not a necessary and proper party to this action.

AND IT IS SO ORDERED.

### AMENDMENT TO COURT'S ORDER OF JUNE 9, 1977

 The defendants have filed a counterclaim, cross-claim, and third party complaint, alleging that the entire annexation procedure set up by the aforementioned

statutes is unconstitutional in that it denies all registered voters in the special purpose district, except those in the area to be annexed, the right to vote in annexation elections. The defendants feel that this procedure constitutes invidious discrimination based on residence within artificially drawn lines against registered voters in the remainder of the special purpose district. Under the wide latitude given the states in structuring annexation elections under *Hunter v. City of Pittsburgh*, supra, the exclusion of a group of voters from the election would be permissible so long as the exclusion did not result from a constitutionally impermissible qualification. As has been previously discussed, residency is one of the very few constitutionally permissible voter qualifications. As such, the state is free to require that voters participating in an annexation election be residents of the areas directly affected by such election. Therefore, the defendants' counterclaim, cross-claim and third party complaint are hereby dismissed.

AND IT IS SO ORDERED.