301 Ga. 367
FINAL COPY

S17A0629.  CITY OF ATLANTA v. MAYS et al.

NAHMIAS, Justice.

This case involves challenges to the City of Atlanta's attempted annexation of five areas.  The trial court correctly held that the annexations were invalid because at the time they would have become effective, the areas in question were already part of the newly incorporated City of South Fulton and thus ineligible for annexation by Atlanta.  Accordingly, we affirm.

1.      On April 26, 2016, the Governor signed House Bill 514 ("HB 514"), a local act that incorporated the City of South Fulton ("South Fulton").  Section 1.10 of the act says, in part, "The City of South Fulton in Fulton County is incorporated by the enactment of this charter and is constituted and declared a body politic and corporate under the name of 'City of South Fulton.'"  Section 1.11 defines the boundaries of South Fulton to "include all unincorporated areas of Fulton County . . . as such exist on July 1, 2016," and explains that "[t]he boundaries of the city are more particularly described in Appendix A, attached

to and made a part of this charter." Appendix A says that South Fulton "shall not include any territory that was annexed into another municipality before July 1, 2016," and it describes all of the areas that are to be a part of South Fulton unless otherwise incorporated.

Section 7.14 of HB 514 provides for a special referendum election to be held on November 8, 2016, for "the purpose of submitting this Act to the qualified voters of the proposed City of South Fulton . . . for approval or rejection." Qualified voters are defined in Section 7.13 as "the qualified electors of Fulton County residing within the corporate limits of the City of South Fulton as described by Section 1.11." Section 7.14 then says, "If more than half of the votes cast on such question are for approval of the Act, it shall become of full force and effect; otherwise, it shall thereafter be void and of no force and effect." However, Section 7.15 (a) says, "Sections 1.10 and 1.11 of this chapter and those provisions of this charter necessary for the special election provided for in Section 7.14 of this charter shall become effective immediately upon this Act's approval by the Governor or upon its becoming law without such approval." Other provisions of HB 514 address things necessary for South Fulton to function after the referendum, such as granting the city "all the powers

2

of self-government not otherwise prohibited by this charter or by general law" and establishing the structure and elections for the city's government.

Shortly after the Governor approved HB 514 on April 26, 2016, the City of Atlanta ("Atlanta") received petitions for annexation from five unincorporated areas of Fulton County contiguous to Atlanta. The communities asking to be annexed (collectively, "the Communities") and the dates the annexation petitions were received are as follows: Cascade Falls on April 29; Cascade Business Corridor on May 16; Danforth Road on May 18; Cascade Manor on May 20; and Cottages at Cascade on June 3. All five petitions requested annexation based on the "60/60 method," see OCGA § 36-36-32, which requires a petition to be signed by at least 60% of the registered voters and by owners of at least 60% of the land in the area proposed for annexation.[1]

---

[1] OCGA § 36-36-32 (a) says:

Authority is granted to the governing bodies of the several municipal corporations of this state to annex to the existing corporate limits thereof unincorporated areas which are contiguous to the existing corporate limits at the time of such annexation, in accordance with the procedures provided in this article and in Article 1 of this chapter, upon the written and signed application of not less than 60 percent of the electors resident in the area included in any such application and of the owners of not less than 60 percent of the land area, by acreage, included in such application. The authority granted in this Code section is in addition to existing authority and is intended to provide a cumulative method of annexing territory to municipal corporations in addition to those methods provided by present law.

Atlanta's municipal clerk validated the annexation petitions and reported the validations to the Atlanta City Council at the beginning of a public hearing that was held on June 15 for all of the proposed annexations except Cottages at Cascade and on June 28 for Cottages at Cascade.[2] On June 20, the City Council approved the four proposed annexations heard on June 15, and the Mayor signed the four annexation ordinances on June 21. On June 28, the City Council approved the Cottages at Cascade annexation, and the Mayor signed the annexation ordinance the same day.[3] All of the ordinances said that they would become effective in accordance with applicable provisions of Georgia law.[4]

---

[2] OCGA § 36-36-36 (a) says:

The municipal governing body shall hold a public hearing on any application which has been determined to meet the requirements of this article. The hearing shall be held not less than 15 nor more than 45 days from the time the governing body makes a determination that the petition is valid. Notice of the time and place of the hearing shall be given in writing to the persons presenting the application and shall be advertised once a week for two consecutive weeks immediately preceding the hearing in a newspaper of general circulation in the municipal corporation and in the area proposed for annexation.

[3] OCGA § 36-36-37 says:

If, after the public hearing, the governing body determines that the annexation to the municipal corporation of the area proposed in the application would be in the best interest of the residents and property owners of the area proposed for annexation and of the citizens of the municipal corporation, the area may be annexed to the municipal corporation by the adoption of an annexing ordinance.

[4] The Cottages at Cascade and Cascade Falls ordinances also provided specific effective dates for purposes of school enrollment, with the former being July 1, 2016, and the latter being July 1, 2017.

4

On July 19, 2016, Emelyn T. Mays and five other individuals (collectively, "Mays"), who represent each of the proposed annexation areas as residents or property owners, filed a petition for declaratory judgment challenging the annexations in Fulton County Superior Court.[5] See OCGA § 36-36-39 (explaining that any resident elector or any property owner in the area may bring a petition for declaratory judgment to challenge an annexation). On August 29, the trial court held an evidentiary hearing, and on September 8, the court issued an order granting Mays's request for declaratory judgment and declaring the annexations null and void on the ground that they were untimely under the terms of HB 514 and thus the Communities were part of South Fulton. In reaching this conclusion, the court expressly rejected Atlanta's contention that HB 514 unconstitutionally conflicts with the general laws governing annexation by municipalities by preventing Atlanta's annexation of the Communities as of July 1, 2016.[6]

---

[5] They also requested, in the alternative, an order compelling Atlanta to comply with the Open Records Act and release certain documents related to the annexations. The trial court held that, given its ruling on the annexation challenge, this request was moot. That holding is not at issue on appeal.

[6] The trial court also held that the annexations were invalid on alternative grounds. Because we affirm the trial court on the first ground, we need not address those issues.

On September 9, 2016, Atlanta filed a notice of appeal to this Court.[7] On September 13, Mays filed an emergency motion asking the Court to lift the automatic supersedeas of the trial court's order, see OCGA § 5-6-46 (a), and to expedite the appeal on the ground that the staying of the order would confuse voters as to whether they could vote in the November 8 referendum, make it impossible to describe the borders of South Fulton, and affect the outcome of the referendum by disenfranchising voters within the purportedly annexed areas. After receiving a response from Atlanta, we denied the motion to expedite the appeal, but granted the motion to lift the supersedeas, meaning that the annexations were not in force at the time of the referendum and that qualified electors residing in the Communities were allowed to vote in the referendum. In the referendum election on November 8, 2016, the voters approved HB 514, thus giving it full force and effect.

2. Mays argues that we should now dismiss this appeal as moot, rather than deciding its merits, because the creation of South Fulton was approved in

---

[7] This Court has jurisdiction over this appeal because it involves a constitutional question. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1).

the referendum last November. The voters' approval of HB 514 does not render the act immune from challenge, however. The relief Atlanta seeks is not an injunction of the referendum. Compare Bruck v. City of Temple, 240 Ga. 411, 413 (240 SE2d 876) (1977) (explaining that because the election approving a local annexation act had been held, the appellants' request for an injunction of the election was moot). Instead, Atlanta is challenging the boundary-setting provisions of HB 514. Relief remains available for this challenge because if it were successful, then South Fulton's boundaries were substantially misidentified and the vote approving HB 514 was invalid, not only because people who did not reside within South Fulton were allowed to vote but also because all of the voters could not have known what particular incorporated area they were voting to approve.[8] Thus, Atlanta's contentions — first, that the Communities were properly annexed into Atlanta before they became part of South Fulton under the terms of HB 514 and second, that if they were not, HB 514 is unconstitutional — are "still alive." Bruck, 240 Ga. at 413 (holding that

---

[8] Although Section 7.19 of HB 514 authorizes the severance of any part of the act that is declared invalid or unconstitutional, severance of the annexation deadline would not resolve the problems created in the rest of the act if the boundaries of South Fulton were substantially misidentified at the time of the referendum.

7

the appellants' challenge to the local annexation act for failing to provide for the extension or creation of wards was not moot after the referendum because it was alleged that "this omission from the local Act renders it unconstitutional from its inception"). See also Wall v. Bd. of Elections of Chatham County, 242 Ga. 566, 568-571 (250 SE2d 408) (1978) (holding that the appellants' request to enjoin the referendum on an annexation act was moot because the referendum had been held, but addressing the merits of other challenges to the act).[9]

3. We turn now to the interaction between HB 514 and Atlanta's attempted annexations and specifically the question of whether the annexations were accomplished in time to remove the Communities from the unincorporated areas of Fulton County that became the City of South Fulton. The portions of HB 514 most pertinent to this question are those defining the boundaries of South Fulton — Section 1.11 and Appendix A. As mentioned previously,

_____

[9] Because the Court in cases like Bruck and Wall ultimately held that the challenged annexation was valid, we did not have to deal with the implications of undoing the referendum election and its effects. Cf. Payne v. Chatman, 267 Ga. 873, 877 (485 SE2d 723) (1997) ("There are many important policy considerations which compel us to adhere to the rule that litigants should make every effort to dispose of election disputes with dispatch and that the courts should not interfere with the orderly process of elections after the general election has been held."). Because we hold that Atlanta's attempts to annex five of the communities that are now part of South Fulton were invalid, we similarly, and fortunately, need not grapple with the legal and practical consequences of "un-creating" a city that has already elected and installed officials and begun to provide services to its residents.

Section 1.11 defines the boundaries of South Fulton as "all unincorporated areas of Fulton County . . . as such exist on July 1, 2016 . . . [and as] more particularly described in Appendix A," which says that South Fulton "shall not include any territory that was annexed into another municipality before July 1, 2016." Atlanta argues that Section 1.11 and Appendix A are inconsistent because Section 1.11 sets the annexation deadline *on* July 1 and Appendix A sets it *before* July 1. But Section 1.11 specifically refers to Appendix A as describing South Fulton's boundaries "more particularly," and Appendix A says particularly that if territory was not annexed into another city before July 1, it became part of South Fulton.

Atlanta also argues that the Communities should never have been considered a part of South Fulton for two reasons: first, because the areas were made part of Atlanta before July 1; and second, because the part of HB 514 setting the date for defining South Fulton's boundaries should be construed as merely directory and the date moved later to allow for Atlanta's annexations. Atlanta raised these arguments only in its reply brief, after similar arguments were made in an amicus curiae brief filed by a group of residents from the Communities who support Atlanta's annexations. An appellant who raises an

9

argument for the first time in a reply brief is not entitled to have that argument considered. See, e.g., Dallow v. Dallow, 299 Ga. 762, 779 (791 SE2d 20) (2016); Higbee Co. v. Solomon, 334 Ga. App. 884, 889 (780 SE2d 490) (2015). But even if we consider these arguments, it is clear that they lack merit (which may explain Atlanta's delay in raising them).

(a) Each of Atlanta's five annexation ordinances recited that it would become effective as provided by Georgia law. The general rule in Georgia law is that a municipal ordinance becomes effective when it is signed and filed by the Mayor *unless* there is a constitutional or general statutory provision governing the matter. See City of Atlanta v. East Point Amusement Co., 222 Ga. 774, 776 (152 SE2d 374) (1966). In this case, there is a pertinent statutory provision altering the rule. OCGA § 36-36-2 (a) sets the effective date of annexations done "other than by local Act."[10] The statute provides special

_____

[10] OCGA § 36-36-2 says, in relevant part:
    (a) Except as provided in subsection (c) of this Code section, all annexation other than by local Act shall become effective for ad valorem tax purposes on December 31 of the year during which such annexation occurred and for all other purposes shall become effective on the first day of the month following the month during which the requirements of Article 2, 3, or 4 of this chapter, whichever is applicable, have been met.
    . . .
    (c) (1) Where an independent school system exists within the boundaries of a municipality, other effective dates may be established by the municipality solely for

10

effective dates for purposes of ad valorem taxes and independent school systems, but it says that "for all other purposes [such annexations] shall become effective on the first day of the month following the month during which the requirements of Article 2, 3, or 4 of this chapter [which provide the three methods for municipal annexations], whichever is applicable, have been met." OCGA § 36-36-2 (a).

Atlanta claims that determining whether the Communities were part of Atlanta before July 1 is not one of those "other purposes." Instead, Atlanta argues that we should look at when the annexations "occurred," and contends that the annexations "occurred" as soon as the Mayor signed each ordinance in June. In support of this argument, Atlanta asserts that OCGA § 36-36-2 (a) indicates that an annexation "occurs" before it becomes "effective" because the statute says that for ad valorem tax purposes, the act "shall become effective . . . on December 31 of the year during which such annexation occurred." We

the purpose of determining school enrollment.

(2) Unless otherwise agreed in writing by a county governing authority and the municipal governing authority, where property zoned and used for commercial purposes is annexed into a municipality with an independent school system, the effective date for the purposes of ad valorem taxes levied for educational purposes shall be December 31 of the year after the year in which the requirements of Article 2, 3, or 4 of this chapter, whichever is applicable, have been met.

11

need not decide what "occurred" means regarding the effective date of the tax aspects of the annexation ordinances, however, because it is clear that no portion of the ordinances had any legal import before July 1. See OCGA § 36-36-2 (a). See also Columbus, Ga. Consolidated Govt. v. Schmidt, 269 Ga. 723, 724 (507 SE2d 435) (1998) (looking at the effective date of the ordinance to determine when its provisions took effect). Thus, there was no effective annexation until July 1, and HB 514 requires that territory be "annexed" before July 1 to be removed from South Fulton.[11]

(b) Atlanta alternatively argues that if the annexations were not accomplished before July 1, 2016, the trial court should have treated the July 1 deadline as merely directory and moved it back one day to allow Atlanta's annexations to take effect. Atlanta bases this argument on Section 7.17 of HB 514, which says in part:

> It is the intention of the General Assembly that this Act be construed as directory rather than mandatory with respect to any

[11] Atlanta also suggests that other, non-timing-related statutes governing annexation indicate that territory is annexed as soon as an annexation ordinance is signed. For example, Atlanta cites OCGA § 36-36-37 (a), which says in part that an area "may be annexed to the municipal corporation by the adoption of an annexing ordinance." There is no indication, however, that the annexation is effective *as soon as* the ordinance is adopted; instead, this language simply makes clear that the type of annexation at issue is accomplished *by the method of* an ordinance.

12

> date prescribed in this Act. If it is necessary to delay any action called for in this Act for providential cause or any other reason, it is the intention of the General Assembly that the action be delayed rather than abandoned. Any delay in performing any action under this Act, whether for cause or otherwise, shall not operate to frustrate the overall intent of this Act.

The provision goes on to discuss two specific applications of this rule, stating that if it is not possible to hold the referendum election or first municipal election on the date specified in the act, such election should be held "as soon thereafter as is reasonably practicable."

As indicated by its text and these examples, Section 7.17's proviso for delay applies to dates when the actions called for by HB 514 must be done; many such actions are specified in the act, including the holding of the initial elections and various actions transitioning government functions from Fulton County to the new city. But HB 514 does not mandate that any action occur on July 1; instead, that is simply the day on which the boundaries of South Fulton were settled under the terms of Section 1.11 and Appendix A. And even if July 1 could be construed as the date when the "action" of determining the boundaries had to be completed, Atlanta has offered no reason why it was "necessary to delay [this] action" to further the intent of HB 514. Atlanta's

13

desire to annex the Communities before they could become part of South Fulton is not such a reason. To the extent Atlanta argues that delay was necessary to ensure HB 514's constitutionality, we now turn to — and reject — the argument that HB 514 would be unconstitutional if it did not allow Atlanta's annexations.

4. Atlanta argues that if HB 514 is construed as preventing its annexations of the Communities on (or even after) July 1, 2016, then the act is unconstitutional and thus void. And because HB 514 is void, the argument continues, the Communities are not part of South Fulton and were subject to annexation by Atlanta on July 1. Atlanta's argument hinges on the Uniformity Clause of the Georgia Constitution, which says in relevant part that "no local or special law shall be enacted in any case for which provision has been made by an existing general law." Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a). The parties agree that HB 514, which applies only to the unincorporated areas of Fulton County, is a local law. They disagree about whether any general law precludes the act.

Atlanta contends that HB 514 conflicts with the general laws that give cities the power to annex contiguous, unincorporated areas when the city meets

14

the requirements of one of three annexation methods set forth in what we will call the "Municipal Annexation Statutes."[12]  In particular, Atlanta claims that HB 514 violates the Uniformity Clause by preventing Atlanta from annexing the Communities pursuant to OCGA § 36-36-32 (a) beginning on July 1, 2016.  We find no intersection, however, between the general Municipal Annexation Statutes, which delegate to *municipalities* limited power to annex territories, and HB 514, a local law exercising the *General Assembly's* exclusive power to incorporate municipalities.

(a)     To begin with, the general law on which Atlanta relies for its purported authority to annex the Communities does not permit a city to annex territory that is already part of another city; OCGA § 36-36-32 (a), which is quoted in full in footnote 1 above, authorizes municipalities to annex only

---

[12] As the Court of Appeals explained in City of Brookhaven v. City of Chamblee, 329 Ga. App. 346 (765 SE2d 33) (2014):

> The General Assembly [has] passed legislation delegating to municipalities the authority to annex adjoining land under three alternative methods: (1) the "100% method," by which a municipality may annex adjoining land upon application by all the owners of the land, with certain exceptions, OCGA §§ 36-36-50 to 36-36-23; (2) the "60% method," by which a municipality may annex adjoining land upon application by a minimum of 60% of adjoining landowners, OCGA §§ 36-36-30 to 36-36-40; and (3) the "Resolution and Referendum method," by which a municipality may, on its own initiative, annex contiguous lands meeting certain requirements, by resolution and referendum, OCGA §§ 36-36-51 to 36-36-61.

Id. at 348.

15

contiguous "unincorporated areas." And, as discussed in Division 3 above, under HB 514 the Communities were already part of the City of South Fulton when Atlanta's annexations would have become effective on July 1, 2016.

We note that on this point, the trial court's analysis was slightly off-base. While the court concluded that HB 514 put a "hold" on the Communities on July 1, pending the November 8 referendum, HB 514 actually incorporated these areas. Section 7.15 of the act says clearly that Sections 1.10 and 1.11, which incorporate South Fulton and define its boundaries, became effective when the Governor approved the act, which he did on April 26, 2016, and Sections 1.11 and Appendix A fixed the city's boundaries as of July 1. See also OCGA § 1-3-4 (b) ("[L]ocal legislation and resolutions intended to have the effect of law become effective immediately upon approval by the Governor or upon their becoming law without his approval, unless a different effective date is specified in the Act or resolution."). Compare City of Brookhaven v. City of Chamblee, 329 Ga. App. 346, 350 (765 SE2d 33) (2014) (holding that the annexation aspect of the local law was not effective upon the Governor's signature because the act provided that "it would only become effective on December 30, after a

16

positive referendum vote").[13]

Once the Communities were incorporated along with the rest of South Fulton, OCGA § 36-36-32 (a), a general law, prevented Atlanta from annexing them.[14] Indeed, if we were to conclude that HB 514 unconstitutionally impinged on Atlanta's annexation power, the General Assembly could never incorporate land contiguous to an existing city, because any such action (which is done by local law) limits the existing city's potential annexation power by withdrawing some land from its reach.

(b)    More importantly, the trial court was correct in concluding that the annexation power of cities is subordinate to the General Assembly's power to annex and incorporate. Atlanta argues that the General Assembly's power to incorporate South Fulton by local law was precluded because the Municipal

---

[13] The trial court also erred to the extent that it concluded that a local law cannot violate the Uniformity Clause if it merely addresses the timing of an action addressed by a general law. See City of Atlanta v. Hudgins, 193 Ga. 618, 629-631 (19 SE2d 508) (1942) (holding unconstitutional a special law that established a different procedure for filing suits against Atlanta by imposing a timing requirement for Atlanta that did not exist for suits against other cities in the general law). See also Studstill v. Gary, 216 Ga. 268, 269-270 (116 SE2d 213) (1960) (holding unconstitutional a local act that established special rules for the date of Dodge County primary elections that conflicted with a general law for county primary election procedures).

[14] Of course, had HB 514 not been approved in the referendum, then by the terms of Section 7.14 the act would "*thereafter* be void and of no effect," rendering the Communities (and the rest of South Fulton's territory) again unincorporated and subject to annexation by Atlanta or any other bordering city.

17

Annexation Statutes regulate how the boundaries of cities may be changed and thus occupy that regulatory field. This Court has explained that the Uniformity Clause "was intended to [e]nsure that once the legislature entered a field by enacting a general law, that field must thereafter be reserved exclusively to general legislation and could not be open to special or local laws." Hudgins, 193 Ga. at 623. See also Franklin County v. Fieldale Farms Corp., 270 Ga. 272, 274-275 (507 SE2d 460) (1998).

However, the field that the Municipal Annexation Statutes occupy is not how all city boundaries are established, but rather only how the boundaries of existing cities may be changed *by those cities* under the limited annexation powers delegated to them by the General Assembly. Indeed, OCGA § 36-36-10 ensures that the Municipal Annexation Statutes cannot be misinterpreted to limit the General Assembly's primary power over annexation, saying:

> Except as otherwise expressly provided in this chapter, no provision of this chapter relating to annexation or deannexation by any such alternate method is intended to or shall be construed to in any way restrict, limit, or otherwise impair the authority of the General Assembly to annex or deannex by local Act.

The only express limitation the legislature has placed on its own authority to

18

annex by local act is OCGA § 36-36-16, which does not apply to this case.[15]

Furthermore, this Court has squarely held that the Municipal Annexation Statutes do not limit the General Assembly's power to control the boundaries of cities. In City of Fort Oglethorpe v. Boger, 267 Ga. 485 (267 SE2d 186) (1997), the Court held that the General Assembly's annexation of a non-contiguous area into the City of Fort Oglethorpe by local act was valid even though municipalities are limited to annexing contiguous areas and some language in OCGA § 36-36-50 could be read as limiting all annexations to contiguous areas. See id. at 485-486. See also Lee v. City of Jesup, 222 Ga. 530, 531 (150 SE2d 836) (1966) ("The existence of prior statutes permitting the enlargement of boundaries does not deprive the General Assembly of the power to alter and extend municipal boundaries without the consent of the persons affected thereby.").

The Court of Appeals applied a similar rationale in City of Brookhaven, which presented circumstances analogous to those here. In that case, the General Assembly passed a local act that "established boundaries for an area of

---

[15] OCGA § 36-36-16, which was enacted in 1996, requires that a local act of the General Assembly proposing annexation include a referendum if the area to be annexed is majority residential and the population exceeds a certain number.

19

land (the 'Annexation Area') for annexation by the City of Chamblee." City of Brookhaven, 329 Ga. App. at 346. The act also provided for a referendum election on the annexation. See id. After the act was signed but before the referendum could take place, Brookhaven attempted to annex part of the Annexation Area. See id. at 349. Citing OCGA § 36-36-10, the Court of Appeals correctly concluded that Brookhaven could not annex land out of the Annexation Area, concluding that "the General Assembly did not intend the alternative methods of annexation to establish a system for municipalities to race the legislature to annex land that it already has designated for annexation under local law." Id. at 352.

Perhaps recognizing that OCGA § 36-36-10 and the related annexation precedents are fatal to its case, Atlanta asserts that the issue here is not annexation but incorporation. In the field of incorporation, however, Atlanta's argument finds even less support. The General Assembly has exclusive power to incorporate municipalities, see Lee, 222 Ga. at 531-532, and general laws delegating some *annexation* power to existing municipalities certainly do not occupy the field of *incorporation*. The General Assembly has enacted some general laws to "prescribe certain minimum standards which must exist as a

20

condition precedent to the original incorporation of a municipal corporation of this state," OCGA § 36-31-1, but Atlanta does not contend that HB 514 violates any of those standards. See OCGA §§ 36-31-2 to 36-31-12.[16]

For these reasons, we reject Atlanta's argument that HB 514 violates the Uniformity Clause.

5. Because the City of Atlanta did not annex the five Communities before they became part of the City of South Fulton by the terms of HB 514, a constitutionally valid local act, the trial court's ruling that Atlanta's annexations were invalid was correct. We therefore do not need to address the other arguments raised by Mays and relied on by the trial court as alternative reasons for holding that Atlanta's annexations were invalid.

Judgment affirmed. All the Justices concur.

---

[16] We note that the General Assembly amended one of these statutes, OCGA § 36-31-2, in 2005 to eliminate a provision that prohibited the legislature from incorporating by local act a city within three miles of an existing city. See Ga. L. 2005, p. 185, § 1. South Fulton, with its boundaries abutting a number of cities, including College Park, Chattahoochee Hills, and Union City, as well as Atlanta, would not have been possible otherwise. Those other cities also were unable to annex the land that was incorporated into South Fulton as of July 1, 2016.

21

Decided June 5, 2017.

Annexation; constitutional question. Fulton Superior Court. Before Judge Dempsey.

Bondurant, Mixson & Elmore, Emmet J. Bondurant II, Robert L. Ashe III, David G. H. Brackett; Holland & Knight, Robert S. Highsmith, Jr.; Joseph D. Young, for appellant.

Robbins Ross Alloy Belinfante Littlefield, Joshua B. Belinfante, Kimberly K. Anderson, for appellees.

Rusi C. Patel, Susan J. Moore, Michael V. Coleman, Peter D. Coffman, amici curiae.