**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J. and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 8, 2021**

# In the Court of Appeals of Georgia

A20A1990. HARRIS et al. v. CITY OF SOUTH FULTON et al.

RICKMAN, Presidng Judge.

The main issue in this appeal is whether the City of South Fulton, approved by voters in a 2016 referendum, includes the neighborhood of Loch Lomond, which was previously in unincorporated Fulton County. Loch Lomond residents – including petitioners Mary Harris, Leander Robinson, and William Shepherd – did not vote in the referendum election because the Fulton County Superior Court had ruled eight days earlier that the City of Atlanta had successfully annexed their neighborhood out of unincorporated Fulton County. But after we reversed that order on appeal in *Johnson v. City of Atlanta*, 348 Ga. App. 216 (820 SE2d 257) (2018), Petitioners filed this action for declaratory and injunctive relief, alleging that their inability to participate in the referendum violated their rights to vote and to equal protection. As a remedy for

those alleged violations, Petitioners sought a judicial determination that Loch Lomond is not part of South Fulton. The trial court denied the petition, and Petitioners appeal. We conclude that Loch Lomond is part of South Fulton under the Supreme Court's reasoning in *City of Atlanta v. Mays*, 301 Ga. 367 (801 SE2d 1) (2017), and that Petitioners are not entitled to the relief they seek. We therefore affirm.

The relevant facts are undisputed and center on three related events – the incorporation of the City of South Fulton, the annexations of Loch Lomond and five similar neighborhoods into the City of Atlanta, and two separate lawsuits challenging those annexations.

*The incorporation of the City of South Fulton.* House Bill 514 ("HB 514"), authorizing a referendum to create the new City of South Fulton in Fulton County, was first presented to the Georgia House of Representatives in March 2015. Section 1.10 of the bill declared that "[t]he City of South Fulton is incorporated by the enactment of this charter and is constituted and declared a body politic and corporate[.]" Section 1.11 of the bill provided that the boundaries of South Fulton "shall include all unincorporated areas of Fulton County . . . as such exist on July 1, 2016" and "are more particularly described in Appendix A[.]" Appendix A, in turn, provided that the city's corporate limits "shall not include any territory that was annexed into another

2

municipality before July 1, 2016[.]" The bill called for a special referendum election to be held on November 8, 2016 for the approval or rejection of the creation of the city by "qualified electors of Fulton County residing within the corporate limits of the City of South Fulton as described by Section 1.11 of [HB 514]."

On April 26, 2016, the governor signed HB 514 into law. On November 8, 2016, the special election was held, and the referendum passed by a margin of 7,983 votes. Soon thereafter, South Fulton held its first city council election, followed by a run-off election. As explained more fully below, Loch Lomond residents did not vote on the referendum or in the subsequent municipal elections. The parties have stipulated that Loch Lomond had approximately 404 registered voters in November 2016.

*The annexation of Loch Lomond and five similar neighborhoods into the City of Atlanta.* Meanwhile, in April 2015 (after HB 514 was first presented to the legislature), certain residents of Loch Lomond petitioned for their neighborhood to be annexed into the adjacent City of Atlanta under OCGA § 36-36-32.[1] On June 6, 2016 (after HB 514 was signed into law), Atlanta approved the annexation by municipal

---

[1] That statute provides a method of annexation "by which a municipality may annex adjoining land upon application by a minimum of 60% of adjoining landowners[.]" *City of Brookhaven v. City of Chamblee*, 329 Ga. App. 346, 348 (1) (765 SE2d 33) (2014).

3

ordinance. Around the same time, Atlanta also approved the annexation of five other unincorporated areas of Fulton County contiguous to Atlanta.

*The lawsuits challenging the annexations.* In June and July of 2016, before the cityhood referendum vote, certain residents of the annexed neighborhoods filed two separate lawsuits against the City of Atlanta in Fulton County Superior Court. The first was brought by eight Loch Lomond residents opposed to Atlanta's annexation of Loch Lomond ("the *Johnson* case") ; the second was brought by representatives of the five similar neighborhoods who disputed Atlanta's annexations of their neighborhoods ("the *Mays* case"). In both cases, the plaintiffs alleged, among other claims, that the annexations were untimely because they did not take legal effect until after the date that HB 514 froze the boundaries of the City of South Fulton. The cases were heard by two different trial court judges.

A final order was issued in the *Mays* case first, on September 8, 2016. The *Mays* judge ruled that HB 514 rendered the five challenged annexations untimely and therefore null and void. Specifically, the judge concluded that HB 514 provided that the City of South Fulton would include all territory of unincorporated Fulton County that had not been annexed into other municipalities *before* July 1, 2016, but the annexations did not become legally effective until that date. The day after the *Mays*

4

decision was issued, the City of Atlanta filed a notice of appeal to the Supreme Court of Georgia. The *Mays* plaintiffs/appellees filed an emergency motion to lift the automatic supersedeas of the trial court's order so that the residents of the five neighborhoods could vote in the upcoming November referendum, and the Supreme Court granted that relief. *Mays*, 301 Ga. at 370 (1).

A final order was issued in the *Johnson* case on October 31, 2016 – just eight days before the November referendum. The *Johnson* judge reached the opposite conclusion of the *Mays* judge, finding that the annexation of Loch Lomond was effective in June 2016, when the Atlanta mayor signed the municipal ordinance, and thus was timely as it preceded HB 514's July 1, 2016 boundary-fixing date. The *Johnson* plaintiffs filed a notice of appeal to the Supreme Court, but not until after the election. Accordingly, Loch Lomond voters – believing they were residents of the City of Atlanta – did not vote in the November 2016 referendum.[2]

---

[2] Ralph Jones, the registration chief for the Fulton County Election Division, testified at the hearing in this case that his office was responsible for determining which Fulton County voters got which ballots, depending on whether the voter lived in a municipality or in an unincorporated portion of the county. According to Jones, the ballots of the Loch Lomond residents did not include the referendum question because "the voters of Loch Lomond [were] registered in the City of Atlanta, at that time."

In 2017, after the referendum, the Supreme Court issued its decision in *Mays*. The Court affirmed the trial court, ruling that the five annexations at issue were not accomplished before July 1, 2016; the boundaries for the City of South Fulton were fixed as of July 1, 2016; and the annexations were therefore invalid. See *Mays*, 301 Ga. at 371-378 (3), (4) & (5). Six months later, the Supreme Court transferred the pending *Johnson* appeal to this Court, stating: "As the parties recognize, *Mays* is controlling in the instant appeal, and it resolves the sole constitutional issue underlying our jurisdiction."

We then decided the *Johnson* appeal. Holding that "all of the legal issues within the scope of this case were disposed of by *Mays*," we reversed the trial court's order upholding the annexation of Loch Lomond. *Johnson*, 348 Ga. App. at 221. We noted that the City of Atlanta had asked us, instead, to vacate and remand the trial court's order "in light of voting rights issues which now exist due to the inability of Loch Lomond residents to vote on the referendum or in subsequent municipal elections." Id. at 219. We further noted that Mary Harris, the lead petitioner in this case, had filed an amicus brief "request[ing] the same disposition so that she may attempt to intervene and raise these concerns for the first time in the trial court on remand." Id. We expressed no opinion on the merits of any voting rights claims, but found that the

6

*Johnson* case was not the appropriate vehicle to litigate them because "no individual voters sought to intervene before the trial court" and those claims were neither raised nor resolved below. Id. at 220.

Following remittitur to the trial court, Petitioners – three residents of Loch Lomond who supported annexation into Atlanta and opposed the South Fulton cityhood referendum – filed this action against the City of South Fulton, the city's clerk, and the Fulton County Board of Registration and Elections ("FCBRE"). Petitioners alleged that (1) their right to vote was denied because they were "deprived of the opportunity to cast their ballots and have their votes counted" in the referendum election and "now purportedly live under municipal authority they neither sanctioned nor had the opportunity to oppose" ; and (2) their equal protection rights were violated because they were treated differently than other residents of unincorporated Fulton County who were permitted to vote on the referendum.[3] In their prayer for relief, Petitioners asked for a declaration that the South Fulton cityhood referendum was void as applied to Loch Lomond and an injunction prohibiting South Fulton from treating Loch Lomond residents as city residents.

---

[3] Petitioners also asserted an election contest claim seeking to invalidate the March 2017 South Fulton municipal election and subsequent runoff, but they later dropped that claim as moot because the challenged term of office had expired.

Following a hearing, the trial court entered a final order denying the requested relief. The court ruled that Petitioners had not shown that any defendant violated their rights, as South Fulton did not exist at the time of the referendum, FCBRE performed only "ministerial election superintendent duties" in response to Atlanta's annexation of Loch Lomond, and "Petitioners themselves were a driving force behind efforts to deprive Loch Lomond of its unincorporated Fulton County status prior to the Referendum." The court further ruled that Petitioners failed to exercise diligence in seeking to protect their voting rights before the referendum; that their request for the court to "interfere with the application of the Referendum" was moot because there were "insufficient Loch Lomond voters to cast the Referendum in doubt"; and that the court lacked the authority to redraw the boundaries of South Fulton. In this regard, the court noted that Petitioners constituted only three of 232 households in Loch Lomond and that the court was

> not inclined to make Loch Lomond an unincorporated island nor impact and create ambiguity as to the service and jurisdictional rights of the overwhelming majority of households in Loch Lomond, without such residents having been made parties to this dispute.

Finally, the court specifically found that Loch Lomond was located in South Fulton.

8

Petitioners appeal, arguing that the trial court's ruling was erroneous.[4] They claim that Loch Lomond did not become part of South Fulton because it was "not in the referendum area," having been previously annexed into Atlanta through a process upheld by the trial court in the *Johnson* case. They further claim that the trial court in this case ignored the violation of their voting rights by effectively "retroactively redrawing South Fulton's boundaries to newly include Loch Lomond years after the [r]eferendum[.]"

1. We begin with Petitioners' argument that Loch Lomond did not become part of South Fulton as a result of the referendum. Based on the Supreme Court's reasoning in *Mays*, this argument fails.

The Supreme Court framed the dispute in *Mays* as a challenge to "the boundary-setting provisions of HB 514," in which Atlanta argued that the five communities at issue were successfully annexed into Atlanta, and if they were not, then HB 514 was unconstitutional. *Mays*, 301 Ga. at 370 (2). The Court concluded that under Georgia law, the five annexations did not become effective until July 1, 2016. Id. at 372-373 (3)

---

[4] Petitioners directed their appeal to the Supreme Court, which transferred it here upon finding that Petitioners had dismissed their election contest claim and their remaining claims did not invoke the Supreme Court's jurisdiction over constitutional questions.

(a).[5] However, HB 514 provided that annexations had to be accomplished before July 1, which was "the day on which the boundaries were settled under the terms of Section 1.11 and Appendix A." Id. at 374 (3) (b). Thus, the annexations were "invalid." Id. at 378 (5).

The *Mays* Court specifically rejected the argument that HB 514 was on "hold" pending the referendum:

> HB 514 actually incorporated [the five communities at issue]. [The act]says clearly that Sections 1.10 and 1.11, which incorporate South Fulton and define its boundaries, became effective when the Governor approved the act, which he did on April 26, 2016, and Sections 1.11 and Appendix A fixed the city's boundaries as of July 1.

Id. at 374 (4) (a). And "[o]nce the [c]ommunities were incorporated along with the rest of South Fulton," Atlanta could not annex them. Id. In a footnote, the Court observed that if the referendum had failed, then HB 514 "would *thereafter* be void and of no effect, rendering the Communities (and the rest of South Fulton's territory) again unincorporated and subject to annexation by Atlanta or any other bordering city."

---

[5] In particular, the Court noted that while municipal ordinances generally become effective when signed and filed, OCGA § 36-36-2 (a) provides that annexations accomplished through the method used for the five communities in that case (and for Loch Lomond) – that is, the 60% method set forth in OCGA § 36-36-32 – do not become effective until the first day of the month following the month when annexation requirements are met. See *Mays*, 301 Ga. at 372-373 (3) (a).

(Punctuation omitted.) Id. at 376 (4) (a) n.14. Finally, the Court rejected Atlanta's challenge to the constitutionality of HB 514. Id. at 374-378 (4).

Applying the reasoning of *Mays* to this case, HB 514 incorporated Loch Lomond into South Fulton when the bill was signed into law on April 26, 2016. Atlanta's subsequent effort to annex Loch Lomond was untimely, and the annexation was invalid. The boundaries of South Fulton were settled on July 1, 2016, and they included Loch Lomond because that neighborhood had not effectively been annexed into another municipality. Loch Lomond was thus incorporated into South Fulton before the referendum, was included in the referendum vote, and could only have "left" South Fulton if the referendum had failed. To hold otherwise would contravene the logic and holding of *Mays*. Accordingly, the trial court did not "retroactively redraw South Fulton's boundaries," as Petitioners allege, because those boundaries already had been established by HB 514.

2. With regard to Petitioners' voting rights and equal protection claims, we assume, without deciding, that Petitioners have established that their rights were

11

violated because they could not vote on the referendum.[6] We turn, then, to the question of whether Petitioners are entitled to the relief they requested.

Petitioners insist that they "do not contest the overall outcome of the South Fulton referendum" and are not trying to invalidate it. Rather, they seek "[a] declaration that Loch Lomond is unincorporated today and not within the City of South Fulton" and an injunction prohibiting South Fulton from treating Loch Lomond as part of that city. But as explained in Division 1, Loch Lomond *was* part of the referendum and *did* become part of South Fulton. Accordingly, granting Plaintiffs the relief they seek would require setting aside the referendum election approving the prior incorporation of Loch Lomond into South Fulton and redrawing the boundaries of South Fulton. We review the trial court's denial of this equitable relief for abuse of discretion. See *Kemp v. Neal*, 288 Ga. 324, 330 (4) (704 SE2d 175) (2010) ("Equitable relief is generally a matter within the sound discretion of the trial court and the exercise of that discretion will not be disturbed on appeal unless there has been an abuse of discretion.").

---

[6] Although the petition alleged that Petitioners also were deprived of their rights to vote in the subsequent municipal election and runoff, their attorney stated at the hearing that "the term that was being challenged has expired," and the relief they seek on appeal centers on the referendum. Thus, we focus on that election.

12

Georgia's Election Code includes a statutory procedure "allow[ing] elections to be contested through litigation, both as a check on the integrity of the election process and as a means of insuring the fundamental right of citizens to vote and to have their votes counted accurately." *Martin v. Fulton County Bd. of Registration & Elections*, 307 Ga. 193, 194 (835 SE2d 245) (2019). See OCGA § 21-2-520 et seq. One ground for an election contest is "[w]hen illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result[.]" OCGA § 21-2-522 (3). In the case of an election contest involving a referendum submitted to voters, the Election Code provides the following legal remedy: "[T]he court shall pronounce judgment as to whether the same was approved or disapproved[.]" OCGA § 21-2-527 (a).

Although Petitioners did not use the statutory procedure to advance the voting rights claims they make here, they nevertheless asked the trial court to set aside the result of the referendum election (or to pronounce judgment that the referendum was not approved) as to Loch Lomond. Accordingly, we find the Election Code and related case law relevant and persuasive in evaluating the trial court's denial of their requested relief. See *Dolinger v. Driver*, 269 Ga. 141, 143 (4) ("Where rights are defined and established by existing legal principles, they may not be changed or unsettled in

13

equity.") (punctuation omitted). See also OCGA § 23-1-6 ("[E]quity follows the law where the rule of law is applicable and follows the analogy of the law where no rule is directly applicable.").

The Georgia Supreme Court has long held that "the party contesting the election has the burden of showing an irregularity or illegality sufficient to change or place in doubt the result of the election." (Citation and punctuation omitted.) *Martin*, 307 Ga. at 194. Thus, the result of an election may be contested only when the challenge involves votes of a sufficient number "to make a difference or cast doubt on the outcome." *Howell v. Fears*, 275 Ga. 627, 628 (571 SE2d 392) (2002); see also OCGA § 21-2-522; *Mead v. Sheffield*, 278 Ga. 268, 272 (601 SE2d 99) (2004) (holding that election was invalid because the number of irregular ballots issued to voters "exceeded the [winner's] margin of victory") (punctuation omitted); *Miller v. Kirkpatrick*, 140 Ga. App. 193 (230 SE2d 328) (1976) (evidence that four voters cast ballots illegally in a primary where the margin of victory was ten votes was "not enough" because "as a simple matter of mathematics four votes cannot either change or place in doubt an election where the margin of victory was greater than those four illegal votes shown to have been cast in the specific political race") (punctuation omitted).

Here, the referendum on South Fulton's cityhood carried by 7,983 votes, but Loch Lomond had only about 404 registered voters at the time. Even assuming all Loch Lomond voters had cast ballots in the referendum election, and all had voted against it (an unlikely event, as at least some of them – represented by the *Johnson* plaintiffs – opposed annexation into Atlanta), the referendum still would have passed. That is, the margin of victory was greater than the number of voters alleged to have been improperly excluded; or, as the trial court put it, "there were insufficient registered Loch Lomond voters to cast the Referendum in doubt."

Petitioners contend that the negligible impact their votes would have had is "beside the point here" and that we should focus, instead, on case law from other jurisdictions "holding that excluding some of the affected residents from a referendum in which the other residents are permitted to vote is an unconstitutional violation of equal protection." But to the extent that those cases are relevant here, they do not stand for the proposition that the result of an election may be set aside when undisputed evidence affirmatively shows that the votes at issue would not have made a difference in the outcome.

In *Committee to Oppose the Annexation of Topside & Louisville Rd. v. City of Alcoa*, 881 SW2d 269 (Tenn. 1994), for example, the Supreme Court of Tennessee

remanded for further findings a lawsuit brought by voters allegedly denied the right to vote in an annexation referendum, where the record showed that the referendum passed by only five votes, yet the plaintiffs alleged that approximately 34 people were improperly excluded from voting. Id. at 270-272. *Griffin v. Burns*, 570 F2d 1065 (1st Cir. 1978), involved a challenge to the validity of "absentee and shut-in ballots" in a city council primary in which the number of challenged votes was greater than the prevailing candidate's margin of victory. Id. at 1069-1070. In affirming the trial court's judgment ordering a new primary, the United States Court of Appeals for the First Circuit observed that "almost ten percent of the qualified and voting electorate was effectively denied its vote in this close election," id. at 1078 (2), and the challenged votes were "clearly the key to the election." (Punctuation omitted.) Id. at 1080 (3). And in *Hayward v. Edwards*, 456 F Supp 1151 (D. SC 1977), the United States District Court for the District of South Carolina considered a challenge to a state law requiring municipal annexations to be approved not only by qualified voters in both the annexing territory and the territory to be annexed, but also – and separately – by "freeholders" owning property in the territory to be annexed. Id. at 1154. In the election at issue in that case, the first two groups approved the referendum but the freeholders did not, meaning that the annexation was defeated because of the

16

challenged separate election scheme. See also *Moorman v. Wood*, 504 F. Supp. 467 (E. D. Ky. 1980) (rejecting challenge by citizens who claimed that the decision whether to de-annex portions of their city should be open to all city voters, not just those residing in the portions to be de-annexed). In all of these cases, unlike in the present case, the alleged voting rights violations made a difference in the outcome of the challenged election.[7] Because the stipulated facts show that the alleged violations of Petitioners' voting and equal protection rights did not make a difference in the outcome of the South Fulton cityhood referendum, the trial court did not abuse its discretion by refusing to disturb that outcome.[8]

3. Finally, Petitioners' requested relief would go too far. If the trial court in the *Johnson* case had not erred, but instead had ruled Loch Lomond's annexation into

---

[7] The other cases on which Petitioners rely are also unhelpful to them, in that those cases either involved elections in which the mathematical impact of the voting rights violation was unmentioned or unknowable, or they were not challenges to a specific election. See, e.g., *City of Phoenix v. Kolodziejski*, 399 U. S. 204 (90 SCt 1990, 26 LE2d 523) (1970) (successful challenge to the results of a city bond election in which voting had been restricted to property owners; Supreme Court did not discuss whether opening the election to all eligible voters, regardless of property ownership, would have mathematically impacted the results, or whether such an impact could even have been discerned); *Barefoot v. City of Wilmington, NC*, 37 Fed. Appx. 626 (4th Cir. 2002) (annexation opponents challenged the city's *failure* to hold an election).

[8] In light of this conclusion, we do not address the trial court's other grounds for rejecting Petitioners' claims.

Atlanta to be void, then Loch Lomond residents would have been able to vote on the referendum, with no potential infringement of their voting rights. Yet the referendum still would have passed, and Petitioners would be exactly where they are now – in the City of South Fulton. Essentially, Petitioners are asking us to put them in a better position than they would be in if their rights had not been violated. They are seeking to accomplish through the judicial process what they could not do through annexation or referendum – exclusion from the City of South Fulton. However, "[e]quity will not confer a windfall." 30A CJS Equity § 2 (2021). See also *Bethsaida Dev. v. Charter Land & Housing Corp.*, 232 Ga. 641, 643 (208 SE2d 452) (1974) ("[E]quity seeks to do complete justice *and to avoid injustice*.") (emphasis supplied).

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*